LEVENSON & ZENITZ, Incorporated,

*vs.*

CHARLES J. BONAPARTE et al.

*Trespass to real estate: injunctions; title; laches.*

In seeking an injunction to restrain a trespass to real estate, the complainants must prove title in them with great strictness.
p. 640

Equity is without jurisdiction in cases of a single act of trespass to real estate; yet where the effect of such trespass will result in causing irreparable mischief or ruin, or reach to the very substance and value of the estate, operating to the destruction of it in the character in which it was enjoyed, equity will intervene. p. 637

Where a defendant in an injunction suit asserts positively that it is not his intention to do a certain act, or violate any particular right asserted by the plaintiff, and there is no evidence to show the contrary, equity will not interfere. p. 641

At the instigation of certain tenants of parts of the building, who claimed to be the owners of the adjacent building, the landlord installed a sprinkler system; ten years after such construction, and after the tenancy had ceased, the former tenants complained that the supports for the tank, which was a part of the system, were built on the walls of the building claimed to be owned by them, and that part of the tank encroached over the roof of their building, and sought by mandatory injunction to have the same removed at the expense of their former landlord; the complainants basing their complaint upon the fact of the invasion of their right to the extent set forth; the landlord offered to remove the obstruction if the complainants shared in the expense and asserted positively that it was not his intention to acquire any right by virtue of the encroach-

ment. *Held that,* under such circumstances it could not be claimed that the invasion complained of went to the destruction of the estate, and that the facts did not come up to the requirements upon which an injunction should be granted in such cases.                                                   p. 643

Apart from statutory limitations Courts of Equity will discourage laches and delay in the enforcement of rights.     p. 643

*Decided December 13th, 1917.*

Appeal from the Circuit Court of Baltimore City. (STUMP, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Richard B. Tippett* (with whom was *J. Royall Tippett* on the brief), for the appellant.

*Charles J. Bonaparte,* for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

This proceeding is an attempt to obtain by means of an injunction the discontinuance of an existing trespass. There has been no proceeding at law for the ascertainment of the fact of the trespass, nor any damages recovered for the invasion complained of. The bill is not that the continuance of the trespass shall be enjoined, pending the action of a Court of law, but that substantive and permanent relief shall be given to the plaintiff by both mandatory and prohibitive injunction.

It is a familiar and well established rule of law, both in this and other States, that while for a single act of trespass upon real property equity is without judisdiction, where the

effect of that trespass will result in causing irreparable mischief or ruin, or reach to the very substance and value of the estate, operating to the destruction of it in the character in which it is enjoyed, that equity will intervene.  *White* v. *Flannigain,* 1 Md. 525; *Balto. Belt R. R.* v. *Lee,* 75 Md. 596; *Long* v. *Ragan,* 94 Md. 462.

In many of the cases, as in *White* v. *Flannigain,* it is either said or clearly intimated, that any given case may present facts of so peculiar a nature as to justify the intervention of equity.  In other words, that each case to some extent at least is to be controlled by the peculiar circumstances which give rise to it.

Under these conditions in order to reach a proper determination there must be a clear understanding of the facts of which the present suit is the outgrowth.

The appellees in this case were and are the owners of a lot of ground and improvements on the west side of Frederick street, north of Baltimore street.  The lot did not run through to Gay street, and at the time when they acquired title the improvements consisted of an old dwelling, which had some time previously been converted into a store.

Adjoining the appellees' lot on the north was one, the legal title to which is said to be in the appellant, and which for the sake of brevity will hereafter be spoken of as the Levenson lot.  This lot was improved by a large building running through from Frederick street to Gay street, designated as No. 6 Frederick street and No. 3 N. Gay street.  The improvements on it consisted of a large furniture factory and warehouse.

Some time after the appellees acquired their lot, the previously existing improvements were pulled down, and a new building four stories in height erected.  This building did not cover the entire lot of the appellees, but left at its northwest corner an open area or light-well for the purpose of light and ventilation.  The lot of the appellees is shown in the accompanying diagram, the shaded portion presenting the improved part of the lot:

No.6 N Frederick St

Area
way

No.4 N.Frederick St

N. Frederick Street

Baltimore Street

In rebuilding the appellees put up their own independent wall upon the north side of their improvement, such wall extending westerly from Frederick street only until it-reached the open area or light well shown on the plat.

In order to obtain sufficient space for their large and apparently increasing business, the appellant, the business of which was at that time carried on by a firm instead of a corporation, rented from the appellees the portion of their building above the first floor, and the appellees agreed for an increased rental to place an additional story upon their building, making it five instead of four stories.

The appellant's predecessor finding that there was much need for an elevator in connection with their business, an elevator was accordingly installed in a concrete structure, located in what had heretofore been the area-way of the appellee's lot, and openings giving access to the elevator appear to have been constructed both from the premises No. 4 and No. 6 Frederick street.　In erecting this concrete structure the

appellees did not continue their independent wall westwardly from the point to which it had been built at the time of their rebuilding, so that the concrete structure had walls of the defendant on the east and south, a concrete wall on the west, and nothing save the Levenson wall on the north.

In the latter part of 1906 or the beginning of 1907 Levenson & Zenitz approached the representative of the appellees, asking and urging the installation of a sprinkler system for No. 4 Frederick street, as a means of reducing the cost of insurance. After some negotiations with regard to details it was agreed on behalf of the appellees to install such a system and the execution of the work was entrusted to the General Fire Extinguisher Company, recommended by Levenson & Zenitz, and the work done under its supervision and direction.

In addition to the piping through the building for the sprinklers, the work involved the construction of a foundation upon which were rested certain uprights to a platform, on which was placed a circular tank of large capacity, and this was connected by pipes with the sprinkler system below.

Levenson & Zenitz continued as the tenant of the appellees until the 1st May, 1915, or 8 years after the installation of the sprinkler system. During all of this time there was no complaint or suggestion even of any encroachment by the appellees upon the property lying to the north of their lot. During those eight years Levenson & Zenitz operated the elevator in the concrete building, used one of the rooms for storage of varnishes and the performance of certain processes connected with the manufacture of furniture.

Shortly after moving out they claimed to have discovered for the first time that the northern foundation wall for the tank had been placed upon the wall of No. 6 and not of No. 4, and that the large circular tank extended over the roof of No. 6 in varying distances; and still later, during the trial of the case in the Circuit Court that the roof of the concrete building likewise projected over the wall of No. 6.

The defendant, Charles J. Bonaparte, was notified of some of these encroachments, and on such notice being given disclaimed any intention to invade the property claimed by the appellant, and offered to remove the same, the cost of such removal to be jointly paid for by the parties hereto upon a reasonable basis in the apportionment of the costs. The appellant insisted that it was under no obligation for any of the costs of the removal and that they must be paid for solely by the appellees, and this not having been done the present proceeding was instituted.

The contention of the appellant rests upon the invasion of its property to the extent already set forth and this is practically a concessum in the case.

The position of the appellees is: First, that the appellant has not proved its title; second, estoppel; third, laches; and fourth, that if they are compellable to remove the present encroachment, they are entitled to be reimbursed a reasonable proportion of the expense of doing the work.

It is true that the title of the appellant is not proved with that degree of strictness which is usually required in such cases. Mr. Zenitz testifies that the corporation is the owner, but if the oath of a party to a cause is all that is needed to establish a title, there would be opened a very wide door for the perpetration of fraud. Defective as is the case of the plaintiff in this regard, it will be assumed for the purposes of this opinion that the plaintiff is the owner of the property.

The other elements of the case, however, are of such a character that the decree of the Circuit Court dismissing the bill of complaint must be affirmed.

While there is not and was not to have been expected, an entire uniformity of decisions upon the questions which are here involved, the great weight of authority is unquestionably all in one direction. The appellant relies especially upon the case of *Stowers* v. *Gilbert,* 156 N. Y. 600 and 605. In that case as in this the invasion complained of was an encroaching wall, but the main question upon which the Court passed in

that case was as to the proper measure of damages in a case where equity jurisdiction obtained.

The case of *Crocker* v. *Manhattan Life Ins. Co.,* 61 Hun. 226, was also a case of an overhanging wall. The testimony in the case showed, practically without contradiction, an injury of $5,000 to the adjoining property, and the decree entered there required the defendant to pay the amount of the damage of $5,000, upon which payment the plaintiff should grant to the defendant a permanent easement in the overhang of 5⅞ inches.

In neither of these cases was there as in the present case a disclaimer on the part of the defendant to the acquisition of any right by virtue of the encroachment, and they are thus readily distinguishable from that which has long been regarded as the leading case in Maryland upon this subject, of *Whalen* v. *Dalashmutt,* 59 Md. 252, in which JUDGE ALVEY says: "The claim on the part of the defendant to the exclusive user of the alley mentioned in the bill, and to the right to replace the stairway removed therefrom, having been renounced by him in such unequivocal and unconditional manner as to preclude him in this, or in any other like proceeding from re-asserting such claim, that ground of the plaintiff's bill for an injunction is entirely removed. For it is a well settled principle in the practice of injunctions that where a defendant asserts positively that it is not his intention to do a certain act, or to violate any particular right asserted by the plaintiff, and there is no evidence to show to the contrary, the Court will not interfere by injunction. It will neither grant nor continue an injunction in the face of such disclaimer." This decision has been uniformly followed in the courts of this State since the time it was rendered in 1883, and would of itself be sufficient to dispose of the present controversy.

It is, however, proper that a few words should be said upon the subjects of laches and estoppel, and these two may well be considered together.

All of the encroachments now complained of have existed at least from 1907. There is no dispute of the fact that the first knowledge of them brought home to the appellee was after May 1st, 1915. The property in question was in the tenancy of the plaintiff and its predecessors, and there is no denial that they had access to all parts of the building, including the roof, both at the time of the erection of the concrete structure, the foundation for the tank, and the placing on it of the tank, and that the invasion was clearly visible to the eye,—that it required no surveyor's instruments to ascertain the fact, and yet Mr. Zenitz claims to have been unaware of it during all of the eight years, either from personal observation, or from reports made to him by employees or members of the firm. He also testified that some one connected with the firm, either a member or employee, inspected the roof every year to ascertain the condition, the repairs needed, if any, and yet that he was without any knowledge of an invasion until after his tenancy had ceased, when he suddenly discovered the fact within a very short time after being notified that in case he desired to continue to make use of the elevator for the convenience of the business of the corporation, he would be expected to see that the amount of current used to run the elevator was paid for by Levenson & Zenitz.

This does not necessarily prove any bad faith upon Mr. Zenitz's part, but it certainly suggests a lack of candor which is required upon the part of one who seeks relief in equity.

The general rule on the subject of estoppel is well stated in 10 R. C. L. 782, where it says: "It is a rule almost of universal application that one who sees another purchase land, or enter upon it under a claim of right, and permits such other to make expenditures or improvements under circumstances which would call for notice or protest can not afterwards assert his own title against such person."

The same rule is given an elaborate note in *Knauf* v. *Elkhart Sand Co.,* 48 L. R. A. (N. S.) 759, and it is the rule which has been adopted in this State in *Casey* v. *Inloes,* 1 Gill, 430. As was said by JUDGE BOYD, in *Aetna Indemnity*

*Co.* v. *Ry. Co.,* 112 Md., at page 396 : "Equity does not interfere to relieve men of the consequences of their own carelessness."

In 10 R. C. L. 395, the law is stated in this way: "It is a familiar doctrine that apart from any question of statutory limitation, courts of equity will discourage laches and delay in the enforcement of rights. The general principle is, that nothing can call forth the Court of Chancery into activity but conscience, good faith and reasonable diligence, where these are wanting the Court is impassive and does nothing." And on page 397 : "It seems that a bar from length of time or laches and one by acquiescence are not distinct, but constitute in reality only one proposition, for while acquiescence will in many cases by analogy to the doctrine of estoppel, preclude a party from asserting claimed rights in equity to the detriment of others who have relied in good faith on such acts, yet, since mere lapse of time is not laches, lying by and acquiescence are of necessity often important factors in determining whether there has been such laches as to constitute a bar to relief in equity." See also *B. & O. R. R.* v. *Strauss,* 37 Md. 237; *Spencer* v. *Falls Turnpike,* 70 Md. 136; *Md. Hotel Co.* v. *Engraving Co.,* 92 Md. 710.

In view of the disclaimer of Mr. Bonaparte it can not be said that the invasion complained of in this case goes to the destruction of the estate in the character in which it is and has been enjoyed, and, therefore, the facts as shown by the record just as in the case of *Herr* v. *Bierbower,* 3 Md. Ch. 456, do not come up to the requirements requisite for the granting of an injunction.

The decree appealed from will, therefore, be affirmed.

*Decree affirmed, with costs.*