# MAYOR AND COUNCIL OF SALISBURY

*vs.*

## CAMDEN SEWER COMPANY.

*Injunction—Sufficiency of Bill—Laches and Acquiescence—*
*Connection with Plaintiff's Sewer.*

A bill which sought to enjoin defendant city from draining surface water into plaintiff's sewer by means of drainage wells constructed by the city and connected by it with the sewer, but which failed to show either that the right was in any way questioned by plaintiff, or that the connection was made without plaintiff's knowledge or without a belief on defendant's part that it had the right to make it, and also failed to show the time at which the connection was made, was demurrable as being too vague and indefinite. p. 568

To justify the grant of an injunction, the court must be fully informed as to all the material facts and circumstances. p. 569

One who, while fully cognizant of his rights, permits a municipality to expend large sums in improvements in contravention of such rights, making no complaint, or any attempt to interrupt the work, is not entitled to relief by injunction.
pp. 569, 570

A bill to enjoin defendant city from maintaining surface-water connections with plaintiff's sewer, which showed that plaintiff company was organized fourteen years previously in order to construct the sewer, and which failed to show at what time the connections were made by the city, whether plaintiff at the time objected to their construction, and whether defendant then claimed the right to make the connections, *held* demurrable as failing to show such absence of laches and acquiescence as to entitle plaintiff to the relief sought. pp. 570, 571

An injunction will not be granted against an injury which is merely anticipated, unless the court is satisfied, from all the circumstances of the case before it, as to the illegality of the acts complained of and that irreparable injury will ensue. p. 572

A bill seeking to enjoin defendant from maintaining surface-water connections with plaintiff's sewer, which alleged that the franchise to build and maintain the sewer was granted to persons named, and was by them assigned to plaintiff, without indicating whether the assignment was in writing or giving its date, and alleging only that the connections were made "without the plaintiff's authority," was demurrable, since the original holders of the franchise might, before parting with the franchise, have made some arrangement, or done some act, by which defendant was authorized to make such connections.        p. 572

An instrument under which one claims the right to relief by injunction, or a copy thereof, must be filed, or its absence accounted for, and its unexplained absence may be taken advantage of by demurrer.                    pp. 572, 573

The mere allegation that plaintiff will suffer irreparable damage is not sufficient, but facts must be stated which will satisfy the court that the apprehension is well founded.        p. 573

*Decided January 14th, 1920.*

Appeal from the Circuit Court for Wicomico County, in Equity (BAILEY, J.).

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*Benjamin A. Johnson, City Solicitor,* and *S. S. Field,* with whom were *Long & Johnson* on the brief, for the appellant.

*Thomas H. Lewis, Jr.,* with whom was *Hooper S. Miles* on the brief, for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order passed by the lower Court overruling a demurrer of the defendant (appellant) to the

bill of complaint filed by the plaintiff (appellee) against the defendant.   The bill alleges that by an ordinance passed by the appellant in July, 1902, it granted to four named persons, and others whom they might associate with them, the right and franchise of laying a sewer pipe on Camden avenue in Salisbury and such other streets and boulevards intersecting or crossing said avenue, or convenient of access therefrom, as they may find advantageous, etc.; that by Chapter 12 of the Acts of 1904, the General Assembly of Maryland constituted those parties and their associates, successors and assigns, a body corporate by the name of Camden Sewer Company of Salisbury, Maryland, for the purpose and with the power to lay, construct and maintain sewers in accordance with the provisions of said ordinance; that under and by virtue of the authority conferred upon it, and the rights and privileges granted it by said ordinance and charter, the plaintiff laid, constructed and maintained a main sewer pipe of not less than twelve inches in diameter on Camden avenue, and other sewer pipes, not less than eight inches in diameter, on certain other streets and boulevards intersecting and crossing Camden avenue, or convenient of access therefrom, naming them, and in all matters complied with, and tenders itself willing, ready and able to comply with the restrictions, terms and conditions of the said ordinance and charter.   It further alleges that the defendant has caused to be curbed, drained, graded and paved a certain street called Newton street, and has constructed on and in the said street at corners and places not formed by the intersection of Newton street with Camden avenue, drainage wells, and has caused them to be connected with plaintiff's sewer pipe laid on Newton street, that the connection from the drainage wells to plaintiff's sewer pipe drains the surface water from Newton street and other streets into plaintiff's sewer pipe on Newton street, and that plaintiff has not given any privilege, right or authority so to do, etc.   A plat was filed which, it is alleged, shows where the defendant has connected other drainage wells

with other sewers of the plaintiff, without right, license or authority. It is also alleged that although plaintiff's sewer pipes are of sufficient size to meet the requirements of its franchise and charter, and to carry such sewerage as they are under the requirement to carry, they are not sufficiently large, nor are they designed to carry surface water, and that the drainage of surface water through small sewer pipes is dangerous to their maintenance; that the plaintiff has demanded that the defendant discontinue such illegal and wrongful use of the sewers, but it has refused to do so and continues such use; that unless the Court passes an order requiring the defendant to cease from its wrongful acts, the plaintiff will suffer irreparable damage and will be without an adequate remedy.

The prayers of the bill are: (1) That the defendant, its agents, etc., be enjoined from maintaining, making, using and employing any connection or connections between the drainage wells on Newton street and other streets named and the sewer pipes, or any of them, of the plaintiff located on, in and under said streets, and from draining and causing to be drained any surface water from, on and off said streets, etc., directly or indirectly into, through or by means of the sewer pipes, or any of them, of the plaintiff located on, in and under the said streets, etc.; (2) That the defendent be required to disconnect within such reasonable time as may be determined upon by the Court and specified in its order, its drainage wells from the sewer pipes of the plaintiff; (3) That a decree be passed against the defendant for such sum as may be made to appear to the Court as a reasonable charge for the use of said sewer pipes during the time that they have been, and shall be wrongfully used; and (4) For general relief.

The appellant contends that the bill is defective for several reasons. The first one relied on is that it is too vague and indefinite to authorize an injunction. It may be assumed that when the Mayor and Council of Salisbury granted the

franchise they were not influenced alone by a desire to aid a
private enterprise, but had in mind the advantages to the
public in having sewers, and in having them constructed and
maintained by private enterprise, instead of being required
to spend public money for the purpose.   Indeed the ordi-
nance refers to those advantages and authorizes the city to
make certain connections with a sewer on Camden avenue,
and to purchase the pipes put down under the authority of
the ordinance.   The charter of the appellee refers in some
detail to the ordinance, including the right to connect with
the sewer named, and to purchase the sewers.

The portion of the ordinance about which the controversy
arose is a part of Section 4 and is as follows:

> "In consideration of the permission hereby and here-
> in granted be it further enacted, and it is hereby ex-
> pressly understood and agreed, that the Mayor and
> and Council shall have the privilege of draining surface
> water on Camden avenue in said main sewer from the
> corners formed by any intersecting street, free of
> charge; provided, and so long as, the admission of such
> surface water shall not, and does not, interfere with the
> primary purpose for which said sewer is laid by said
> company, or prevent its efficiency in that regard, or
> prove detrimental to its permanency; and if the said
> company and the Mayor and Council should at any
> time disagree on any matter relating to the admission
> of said surface water into said sewer, then the matter
> shall be submitted to three disinterested persons * * * ;
> and the decision of the three shall be final."

The plat filed with the bill has nothing on it to designate
the points of the compass, but, for convenience of descrip-
tion only, we will assume that Camden avenue runs from
north to south, north being toward Middle avenue and south
towards Newton street.   On that assumption all of the streets
on which there are drainage wells, as shown by the plat, are
on the westerly side of Camden avenue.   Although that is
not so stated in terms, apparently Camden avenue is lower

than the streets west of it, and the surface water runs towards Camden on the streets going east and west. The appellee contends that the City of Salisbury was only authorized to connect with the sewer on Camden avenue directly, and not by connecting with other sewers which empty into the main one on that avenue, while the appellant contends that it has the right to connect with the other sewers leading to the one on Camden avenue. It seems clear that if it be conceded, for the purposes of the case as now presented, that the appellee's contention is correct, the bill is too vague and indefinite to justify the issuance of an injunction. According to the plat filed there are thirteen of the drainage wells of which the appellee complains, none of them being on Camden avenue. It is fair to assume that in a place the size of Salisbury that number of such wells could not be built and connected with the sewers without a knowledge of them by the appellee, or its agents. Yet there is no allegation in the bill that the right to connect those wells was in any way questioned, or that it was objected to, or, that the connections were made without the knowledge of the plaintiff or its agents, or without the belief of the defendant that it had the right to make the connections. The only allegation that can be claimed to relate to those matters are that the plaintiff has not granted or given any privilege, license, right or authority to the defendant, or to anyone else, to connect the drainage wells, or any of them, with the sewer pipe on Newton street, or to drain surface water from Newton street or any other street into the sewer pipe of the plaintiff laid on Newton street, and in reference to the other sewer pipes that the defendant "has in other places and at other times, wrongfully and without right, license or authority, connected other drainage wells with other sewers of your orator, and thereby caused to be drained into such other sewer pipes, surface water from other streets"—the plat being referred to to show where they are.

It is not stated when Newton street was curbed, drained, graded and paved, or when the connections were made with

the sewer pipe on that, or any of the other streets. The bill
is likewise silent as to the time when any of the sewer pipes
were laid. It was filed over sixteen years after the ordinance
was passed, and over fourteen years after the charter was
granted to the plaintiff, and yet not the least information is
given to the Court as to when, or under what circumstances,
any of the things complained of were done. No one could
tell from this bill whether they, or some of them, were done
one, two, five, ten or fourteen years before it was filed. If
it be suggested that such things are matters of defense, it
need only be replied that, under the decisions of this Court
as well as those elsewhere, the Chancellor must be informed
as to all material facts and circumstances reflecting upon the
questions involved, before he should grant an injunction.
As said in *Johnston* v. *Glenn*, 40 Md. 200: "To warrant the
Court in issuing an injunction, strong *prima facie* evidence
of the facts, on which the complainant's equity rests, must be
presented to the Court, and a full and candid disclosure of
all the facts. * * * The bill should fully and fairly state the
case, within the knowledge of the plaintiff, so that the Court
may see that *prima facie* the thing is fair, in the aspect in
which it is presented to the Court—all the facts must be
brought before the Court which are material—there must be
no concealment—all the *res gestae* must be represented as
they actually are. *Kerr on Inj.*, 608." That has been re-
peated in substance in many of our decisions, amongst them
being *County Commissioners* v. *Franklin Coal Co.,* 45 Md.
470; *Lamm* v. *Burrell,* 69 Md. 272; *Lipson* v. *Evans,* 133
Md. 370, 377.

Then there is another well settled doctrine which should be
very controlling in a case of this kind, where the party
sought to be enjoined is a public corporation. The city must
not only have incurred expense in the construction of the
thirteen drainage wells, and the connections with the sewer
pipes, but it may be that if the plaintiff had made the claim
it now makes promptly and within a reasonable time, and

that had been decided in its favor, the city would have long
since made provision for sewers of its own, or have taken
steps to purchase those of the plaintiff under the terms of
the ordinance. As to such matters we are left in the dark by
this bill, as we have no idea when the wells, etc., were con-
structed. Certain it is, if there is any necessity for the city
to build sewers now, the cost will be greatly in excess of what
it would have been five, six or more years ago. In one of the
leading cases in this State reflecting upon this subject, *B. &
O. R. R. Co.* v. *Strauss,* 37 Md. 237, JUDGE ROBINSON, in
speaking for the Court, said: "Whatever may have been the
original equities of a party, if he has been guilty of laches
or unreasonable delay, if fully cognizant of his rights, he has
lain by, and suffered a public corporation to expend large
sums of money in laying down and completing its railroad
tracks in contravention of his rights, and makes no complaint,
and no attempt to interfere or interrupt them during the
progress and construction of the work, such acquiescense will
preclude him from relief by way of injunction." See also
*Md. Hotel Co.* v.*Engraving Co.,* 92 Md. 710; *Spencer* v.
*Falls Turnpike Road,* 70 Md. 136; *Levinson* v. *Bonaparte,*
131 Md. 635, 642. JUDGE PHELPS in his work on *Juridical
Equity,* discusses at some length laches, and in Section 272
he speaks of acquiescence, and in illustration of it says:
"Thus, where a party expends money or does some act under
a mistake as to his legal rights, misled either by the conduct,
language or silence of the real owner, he being fully aware
of his own right and of the mistake made by the other party,
there is such fraud as will entitle the Court to restrain the
possessor of the legal right from exercising it." In this con-
nection it may be well to call attention to the fact that the
bill is also wholly silent as to whether the plaintiff knew that
the defendant claimed at the time the connections were made
that it had the right to do so, under its construction of the
ordinance, and also as to whether any attempt was made to
settle the controversy out of Court, as was evidently contem-

plated by the ordinance, as shown by Section 4, quoted above. While we are, of course, aware that laches, acquiescence, etc., are generally matters of defense, unless disclosed in the bill, when they can be reached by demurrer, we refer to them because there is enough in this bill to suggest that what is complained of, at least in part, took place sufficiently long ago to call for some explanation for the delay and the circumstances, in order to authorize a court of equity to grant this extraordinary writ. Injuries that the appellant may have sustained by delay or acquiescence suggest themselves. Of course, we do not mean to decide that there were such laches and acquiescence as will preclude relief, but only that the plaintiff is, under the facts which we have before us, required to clear the atmosphere sufficiently to enable the Court to see that *prima facie* it has the right to call upon the Court for such relief as it asks. It cannot be doubted that it is the duty of the plaintiff to disclose all material matters necessary to inform the Court of the actual conditions, and when the bill shows that the plaintiff was created to carry out the purposes of the Ordinance of 1902 as far back as 1904, if there was any considerable delay, the bill should show it and explain why there was. If in fact there was such delay, or such acquiescence as would prevent the plaintiff from procuring an injunction, a court of equity could not sanction the withholding of the facts, and be answered by saying, "we have not alleged anything in the bill which can be reached by demurrer, and hence we are immune from such attack." One bill in equity may be demurrable for what it does not say, while another may be for what it does say, and one may be for saying too little as to some matters, and too much as to others.

Another allegation in this bill may be referred to in connection with what we have said above. It is alleged that, although the sewer pipes are of sufficient size to carry such sewerage as they are under the franchise and charter required to carry, "they are not sufficiently large, nor are they

designed to carry surface water, and that the drainage of surface water through small sewer pipes is dangerous to the maintenance of such sewer pipes." The bill does not give the size of the pipes—except to say that the one on Camden avenue is not less than twelve inches in diameter, and the others not less than eight inches—and does not state whether in point of fact there has ever been any trouble from the surface water in them. A notation on the plat filed does show that the pipe on Camden avenue as far as Newton street is fifteen inches in diameter, but fails to show the size of any on the other streets. At most the plaintiff complains of what is only an anticipated injury, and while a court of equity may under some conditions grant an injunction to prevent such injury, it will not do so unless it can be satisfied from all the circumstances of the case before it, as to the illegality of the acts complained of and that irreparable injury will ensue. *Adams* v. *Michael,* 38 Md. 123; *Warren Mfg. Co.* v. *Baltimore,* 119 Md. 188, 222; *Pope* v. *Clark,* 122 Md. 1.

Again, the bill alleges that the rights and franchises granted to the four persons named in the ordinance and others "were assigned and set over by the owners thereof unto your orators." It does not state whether the assignment was in writing, although presumably it was, but if not, the bill should have said so and have given the date of the assignment. If in writing, then it or a copy should have been filed. It is possible that the original parties made an arrangement, or did some act, before they parted with the franchise, by which the city was authorized to do what it did, even if the appellee's contention as to the construction of the ordinance is correct, but we are not told when the assignment was made, and have no way of determining whether it was a valid assignment. The bill only alleges that the connections were made without *the plaintiff's* authority. The decisions in this State require an instrument, or a copy of it, under which a plaintiff claims the right to relief by injunction, to

be filed, or its absence accounted for. *Laupheimer* v. *Rosen-baum*, 25 Md. 219; *Hankey* v. *Abrahams*, 28 Md. 588; *Nagengast* v.*Alz*, 93 Md. 522; *Miller's Equity*, 689, Sec. 582. The absence of an instrument of that kind can be taken advantage of by a demurrer. *Miller* v. *Marble Co.*, 52 Md. 642; *Morton* v. *Graffin*, 68 Md. 545.

Another objection is that there is no sufficient statement of facts in the bill to show irreparable damage. The mere allegation that the plaintiff will suffer irreparable damage is not sufficient, but facts must be stated which will satisfy the Court that the apprehension is well founded. Although there are many cases in this State, we need only refer to some of the late ones. *Consolidated Gas Co.* v. *R. R. Co.*, 107 Md. 671; *Fowler* v. *Pendleton*, 121 Md. 297, 301; *Pope* v. *Clark*, 122 Md. 1; *Mayor, etc., Baltimore* v. *Sackett, ante* p. 56.

From what we have said, it will be seen that we are of the opinion that the demurrer should have been sustained, and it will be noticed that we have not construed the ordinance and determined the rights of the parties under it. We have purposely avoided doing so, because we are of the opinion that the bill is defective for the reasons we have given, and we do not deem it desirable to construe the ordinance in the absence of information on the matters referred to. We will remand the case, so the bill can be amended within such time as the lower Court may fix.

> *Order overruling demurrer reversed, and cause remanded, the appellee to pay the costs in this Court and those below to abide the final result.*