# CIRCUIT COURT OF BALTIMORE CITY.

Filed January 17, 1927.

WALTER W. BEERS, ET AL.,
VS.
THE AUTOMOBILE CLUB OF MARYLAND, ET AL.

*William D. Macmillan* for plaintiffs.

*Harry N. Abercrombie* and *William J. O'Brien* for The Automobile Club of Maryland.

*Joseph Townsend England* for W. Strau McCurley.

*Clifton S. Brown* for Keystone Indemnity Exchange.

STEIN, J.—

On March 12, 1926, the bill in this case was filed to restrain the Automobile Club from carrying out a contract with the Keystone Indemnity Exchange because ultra vires a demurrer was interposed and overruled. Answers were filed, setting out that since the action on the demurrer the contract complained of in the bill was amended, and a contract made free from the matters complained of in the bill.

The testimony taken in open Court shows: The Club was incorporated

under the Maryland Laws, on February 14, 1906, "as a *social organization*," the objects and purposes of which (in substance) are the promotion of a *social organization* or club in whole or in part of persons owning automobiles to afford a means of recording the experience of members and others using motor vehicles or automobiles; to arrange for pleasure trips, and to encourage the development of the automobile as a means of pleasure driving and commercial transportation; * * * "and generally to maintain a social club devoted to automobilism," The testimony also shows: that after the bill was filed, an amendment to the above charter was perfected, making the Club a "co-operative" organization, for the same objects and purposes as set out in the charter. The effect of the amendment was to strike out the word "social" where used in the original charter and to certify that the corporation is a co-operative organization.

The testimony further shows: the contract is between the Automobile Club of Maryland and the Keystone Indemnity Company, Inc., attorney in fact, and subscribes to the Keystone Indemnity Exchange, and provides substantially:

"That the contract named in the bill is hereby amended so that it contains only provisions and agreements and recitals substantially as follows, viz:

Whereas, it is the desire and purpose of the Automobile Club of Maryland * * * to stimulate public interest in its membership by securing for its members reciprocal automobile insurance at a saving; and

Whereas, it is the desire of the Keystone Indemnity Company, attorney in fact for the subscribers to the Keystone Indemnity Exchange (with the exception only as hereinafter stated) to furnish *exclusively* for the members of the Club such reciprocal automobile insurance at a saving.

Now, therefore, in consideration of the premiums and the mutual understanding of the *Club* and the Company, this agreement witnesseth. Then these provisions of the contract follow, viz:

The Company agrees:

1. To insure in the Keystone Indemnity Exchange only Maryland members of the Club in good standing; and to make it known to all its policyholders the reasons for making this agreement and point out to them that the Club is to be permitted to supervise the affairs of the Keystone Company and the Keystone Exchange within the State; such permission if availed of by the Club will offer greater assurance of prospering through good management and that the Keystone Company will offer every inducement possible to secure its policyholders as Club members.

2. Refers to standard form of policy.

3. That a sales department shall be organized along the line as developed by automobile clubs in other named cities, which department shall be under the management of the Company, subject to the approval of the Board of Governors of the Club.

4. That the Company shall co-operate with the Club in every way that it is practical and legal to do so, exercise and maintain free legal and emergency road service for the members of the Club.

5. To rent office space from the Club.

6. Under certain conditions to organize an exchange with a home office in Baltimore exclusively for Club members.

7. To deposit its money in Baltimore banks and to maintain a named percentage as reserve.

8. To permit a committee of at least three members of the Board of Governors of the Club to review at least monthly the insurance written, to review the decision of complaints arising out of such insurance written, with the right to recommend, which recommendations may be accepted by the Company with the right to Company and Committee to have arbitrated any dispute.

9. Refers to disposition of 75% of premiums paid for the insurance.

10. Shall retain as general manager as long as Club desires, its present manager for Maryland.

The Automobile Club agrees:

1. To rent space in its building to the company at a price to be fixed.

2. To employ the Company exclusively for a five-year period with a right of renewal for five years more; to solicit members for the Club at a named price, which the testimony shows to be less than that thereto-

fore paid by the Club. These are the only obligations the contract imposes on the Club: they do not impose on the Club any ultra vires act or obligation, that such acts are well within the Club's charter powers; that while the contract does not impose any obligations on the Club other than those now named, and does not obligate the Club to appoint the Committee, named in paragraph eight, but only permits it (a) to review the business written, and complaints made, (b) to make recommendations, plaintiff's counsel contends that in so doing the Committee could act beyond the Club's charter powers; in which event its acts would be ultra vires.

The testimony of its officers show the Club has not appointed such committee, indicates that, at least, for the present, the Club has no intention so to do.

Whether or not the so doing would be ultra vires depends upon:

A. Whether or not appointing such committee would be within that one of its charter powers intended "to encourage the development of the Automobile as a means of pleasure driving and commercial transportation." i. e., whether cheaper motor insurance for the Club members would tend to encourage use of motor vehicles in pleasure and/or business.

B. Whether or not, such Committee would act within or without the Club's charter powers; i. e., whether it would do authorized acts in an unauthorized manner.

These questions ought not to be determined now, because the testimony of its officers show, the Club has not appointed the Committee above named, and has no present intention of so doing.

"It is a well settled principle in the practice of injunctions that where a defendant asserts positively that it is not his intention to do a certain act, or to violate any particular right asserted by the plaintiff and there is no evidence to show to the contrary, the Court will not interfere by injunction."

Levenson vs. Bonaparte, 131 Md., 635 at 641.

I will sign a decree:

1. Holding that the Automobile Club of Maryland has the power to make the lease and to employ the Exchange as set out in the amended contract.

2. Retaining jurisdiction over the questions not now determined.

3. Requiring the Automobile Club of Maryland to pay the costs.