## KAUFMAN ET UX. *v.* PLITT

[No. 179, October Term, 1947.]

*Decided June 16, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Joseph O. Kaiser,* with whom was *R. Palmer Ingram* on the brief, for the appellants.

*T. Lyde Mason, Jr.,* with who was *J. Dallas Kirwan* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was instituted by Harry J. Kaufman and his wife, of Baltimore County, against Clarence M. Plitt,

of Baltimore City, to obtain (1) an injunction against the sale of the property at 1005 Leeds Avenue under execution, and (2) an accounting to determine the amount legally due on the judgment entered March 12, 1937.

This is the second time the case has been appealed to this Court. Complainants alleged in their original bill of complaint that the judgment, which was obtained by confession in the Superior Court of Baltimore City, included usurious interest. Defendant demurred to the bill of complaint, and from an order overruling the demurrer defendant appealed. On June 11, 1947, this Court said that a court of equity will enjoin the sale of land under execution on a judgment entered in a court of law by confession upon a promissory note given for a usurious consideration upon payment of the real amount of the debt with legal interest, but we held that the decisive question in this case was whether complainants were estopped from invoking the aid of equity on account of laches. Complainants had waited nine years before they entered suit and no explanation was offered for the delay. In the absence of any allegation to account for their delay, a case of laches was apparent on the face of the bill. However, complainants informed the Court that defendant knew for some years that they disputed the judgment on the ground of usury, and since the filing of the bill they had come into possession of a photostatic copy of a letter which he wrote to them in 1937 stating the understanding with which the notes were signed and the judgment was to be entered. They declared that this letter would explain why they delayed so long in bringing suit. In view of these representations we reversed the order of the Court and remanded the case with direction to grant leave to complainants to amend their bill by explaining the delay. *Plitt v. Kaufman*, 188 Md. 606, 53 A. 2d 673.

On August 22, 1947, complainants filed their amended bill of complaint. In addition to the allegations of the original bill, it alleged: (1) That the note dated Feb-

28

ruary 1, 1936, on which the judgment was confessed, represented the same indebtedness as that evidenced by two notes previously executed by Roland H. Kaufman, son of complainants; that defendant agreed to look primarily to Roland for payment of the indebtedness and to credit any amounts collected from Roland on their note; and that this agreement and defendant's further promise not to make unreasonable demands for the payment of any judgment entered upon the note were evidenced by a photostatic copy of a letter filed an an exhibit with the amended bill; (2) that in 1941 defendant and others filed a petition in the District Court of the United States for the District of Maryland to declare Harry J. Kaufman bankrupt, and during those proceedings Kaufman and his son Roland made known to defendant, and also to the referee and the trustee in bankruptcy, that the judgment included usurious interest, and defendant took no action to enforce his judgment by execution between 1941 and July 3, 1946.

Defendant demurred to the amended bill, and the Court sustained the demurrer and dismissed the bill, holding that the additional allegations did not sufficiently explain the delay of complainants in attacking the judgment against them, and consequently they were barred by laches. Complainants are now appealing from the order sustaining the demurrer and dismissing the amended bill.

The doctrine of laches is based upon grounds of public policy, which requires the discouragement of stale demands for the peace of society. Where there is difficulty in doing complete justice by reason of the death of the principal witness or witnesses, or where the original transaction has become obscured by time because of gross negligence or deliberate delay, a court of equity will not aid the party whose application thus lacks good faith and reasonable diligence. Equity takes the view that such manifest neglect constitutes an implied waiver arising from a knowledge of the conditions and an acquiescence in them. In determining what will constitute laches so as to bar relief in equity, the court has no in-

flexible rule as to length of time, but must decide the question from all the facts and circumstances of each particular case. *Hoffa v. Hough,* 181 Md. 472, 30 A. 2d 761; *Young v. Cockman,* 182 Md. 246, 34 A. 2d 428, 149 A. L. R. 1006. Ordinarily the defense of laches must include not only lapse of time but also some prejudice to the defendant, and must be made by answer showing such fact. If, however, the bill on its face shows both lapse of time and prejudice, or such lapse of time and circumstances as suggest prejudice or acquiescence and call for explanation, the bill is demurrable. *Salisbury v. Camden Sewer Co.,* 135 Md. 563, 571, 109 A. 333; *Plitt v. Kaufman,* 188 Md. 606, 614, 53 A. 2d 673, 677; *Clarke v. Brunk,* 189 Md. 353, 362, 55 A. 2d 919, 923.

In the letter signed by defendant February 2, 1937, on the stationery of his attorney, C. Alexander Fairbank, Jr., and sent to Kaufman and his wife, he said: "It is my intention to co-operate with you to attempt to work out the indebtedness represented by your note, as also the same indebtedness represented by the notes of your son, and, in pursuance thereto, I will not make any unreasonable demands for the payment of any judgment which may be entered upon the note of $7,500, unless my rights may be affected or jeopardized by any other creditors which you may have." We find nothing in this letter that excused the delay in attacking the judgment on the ground of usury. Complainants acknowledge in the amended bill that they themselves are unable to determine the amount of usurious interest in the note and judgment on account of the "complicated nature of the many transactions giving rise to the indebtedness" and that the records were in the possession of defendant. But Fairbank, who was thoroughly familiar with the transactions between the parties, was killed in an accident about four years ago. Louis Silberstein, who succeeded him as defendant's attorney, died before the institution of this suit. It can be easily understood how the death of Fairbanks and Silberstein could handicap defendant in making his defense.

Nor do we find that the allegation in the amended bill concerning the proceedings in the District Court excuses the laches. The fact that Kaufman and his son may have complained to defendant and to the referee and the trustee in bankruptcy that the judgment included usurious interest does not affect the application of the doctrine of laches. In fact, it would seem that defendant, by joining other creditors in filing a petition in bankruptcy against Kaufman, indicated that he wanted to collect all that was possible upon the judgment. It was not until five years after the bankruptcy proceedings that complainants brought the instant suit to attack the judgment. Kaufman was denied a discharge in bankruptcy because of the muddled condition of the few records he produced. In *Mackall v. Casilear*, 137 U. S. 556, 11 S. Ct. 178, 34 L. Ed. 776, the United States Supreme Court held that the plaintiff's laches in delaying about twelve years before bringing suit to set aside a conveyance from his father to another defendant were not excused by allegations that he had always protested against the claim of title made by that defendant thereunder, and even had negotiated with him in the hope of reaching an amicable agreement, where there was nothing to show that the defendant acknowledged the plaintiff's rights, or said or did anything to encourage such hope.

As the usury statute, Code 1939, art. 49, §§ 2-6, is based upon public policy, any effort to evade it should be scrutinized by the courts; but under no condition should a court of equity tie its hands, even in the face of such a statute, when to do so would open the door to fraud or gross inequities. Upon public policy is also based the right of the court to prevent the operation of the usury statute under circumstances which will work hardship and injustice upon innocent persons when such hardship could have been avoided without impairing the debtor's right. The difficulty of the position in which complainants find themselves is one which has come about by their own delay. They have been guilty of laches to

such an extent that they are clearly precluded from relief in this suit.

*Decree affirmed, with costs.*