## MITCHELL *v*. CASSEDY ET AL.

[No. 191, October Term, 1951.]

340

*Decided June 13, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Douglas H. Gordon,* for appellant.

*D. List Warner* and *Edward L. Burke,* with whom was *R. Contee Rose* on the brief, for appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This bill for an accounting filed in the Circuit Court of Baltimore City by William Harvey Mitchell against

Thomas S. Cassedy and others, copartners trading as Whitman, Requardt and Associates, contains the following allegations:

(1) Complainant owns 100 shares of common stock of William W. Handy and Company, Inc., a Maryland corporation, now dissolved, out of a total of 900 shares authorized to be issued, of which he believes 400 shares were issued to the president of the corporation, William W. Handy, now deceased.

(2) In 1923 Handy, who was a consulting engineer, valued the property of Consolidated Gas, Electric Light and Power Company of Baltimore with the assistance of complainant, and at that time discussed with him the idea of preparing an index of prices to be published periodically for sale to public utility corporations. The purpose of the index was to determine the cost of reproduction of corporate assets at any particular date. The first issue of the index was published in January, 1924. It was published twice a year thereafter in January and July. William W. Handy and Company, Inc., which was incorporated in 1926 for the purpose of publishing the index, published it from January, 1926, until January, 1929.

(3) The issue of July, 1929, was published under the individual name of William W. Handy, and the publication so continued through the issue of January, 1932. The charter of the index corporation was forfeited for nonpayment of taxes, according to a proclamation issued by the Governor of Maryland in January, 1932.

(4) Handy died in the spring of 1932. Shortly after his death, his widow's financial adviser, C. Prevost Boyce, discussed the publication of the index with complainant. Complainant suggested that the index should be published by the engineering firm headed by Ezra B. Whitman. He persuaded Whitman and his partner, Gustave J. Requardt, to publish it, and Whitman told him that he expected to share the profits with him and Mrs. Handy. The issue of July, 1932, was described as published for the estate of William W. Handy, deceased. Whitman's

firm published subsequent issues up to and including the issue of July, 1950, for Handy's estate. Complainant sent Whitman a notice of his claim to an interest in the publication, and Whitman in reply suggested that he should take the matter up with Mrs. Handy. Complainant also notified Requardt, and he promised to advise him when payments became due to Mrs. Handy, but he never did so. Defendants continued to pay the profits from the publication to Mrs. Handy, although they knew that complainant had a right to share in the profits.

(5) Some days after Handy's death, Mrs. Handy informed complainant that all the other stockholders in the index corporation had turned over their stock to her, but, because of his different status, she would pay him for his share in the corporation.

(6) Upon the forfeiture of the charter of the corporation in 1932, its directors were charged with the duty of dividing the corporate assets among the stockholders. But Handy, the principal director, wrongfully appropriated the assets; and Mrs. Handy, his executrix, never accounted for them in her administration upon his estate, and she also wrongfully appropriated the assets. Although she denied that she was under any legal liability to complainant, she conferred with the president of Consolidated Gas, Electric Light and Power Company, of which complainant was an employee, and urged him to request complainant not to assert his claim. As a result of the president's request, complainant did nothing further about the matter for a number of years.

(7) Complainant's attorney at the time of Handy's death was Adolph Gutberlet. After his death, complainant referred the matter to John Paterson, attorney, who died while working on the case. Finally complainant placed the matter in the hands of R. E. Lee Marshall, attorney, who made a demand upon Mrs. Handy for settlement. In 1950, however, Mrs. Handy sold the assets of the corporation to defendants, who took them with knowledge of complainant's claim. The index produces an annual profit and also gives valuable publicity to its

publishers, but complainant is unable to determine his exact share in the enterprise and has no adequate remedy at law.

The bill prays the Court to declare defendants to be constructive trustees of the assets of the corporation, and to order defendants to pay to complainant his share of the assets of the corporation and also his share of the profits of the publication which defendants have wrongfully paid to Mrs. Handy or wrongfully retained.

Defendants demurred to the bill, and the chancellor sustained their demurrer and dismissed the bill. From that decree complainant appealed to this Court.

In a proceeding in equity, a person otherwise entitled to restitution is barred from recovery if he has failed to bring a suit for so long a time and under such circumstances that it would be inequitable to permit him now to prosecute the suit. Equity aids the vigilant, and when a claimant has slumbered on his rights for an unreasonable length of time, allowing his claim to become stale and causing prejudice to the adverse parties, such neglect constitutes an implied waiver arising from a knowledge of the conditions and an acquiescence in them. *Croyle v. Croyle,* 184 Md. 126, 136, 40 A. 2d 374; *Plitt v. Kaufman,* 188 Md. 606, 614, 53 A. 2d 673; *Kaufman v. Plitt,* 191 Md. 24, 29, 59 A. 2d 634.

Ordinarily, the defense of laches must be made by answer alleging facts showing lapse of time and prejudice to the defendant, but if the bill of complaint shows on its face both lapse of time and prejudice, the bill is demurrable. *City of Salisbury v. Camden Sewer Co.,* 135 Md. 563, 571, 109 A. 333; *Plitt v. Kaufman,* 188 Md. 606, 614, 53 A. 2d 673; *Clarke v. Brunk,* 189 Md. 353, 362, 55 A. 2d 919; *Kaufman v. Plitt,* 191 Md. 24, 29, 59 A. 2d 634; *Berman v. Leckner,* 193 Md. 177, 185, 66 A. 2d 392; *Dorsey v. Stone,* 197 Md. 220, 223, 78 A. 2d 757, 759; *Stoewer v. Porcelain Enamel & Mfg. Co.,* 199 Md. 146, 151, 85 A. 2d 911, 913.

Complainant's claim arose as far back as July 1929, when the name of the publisher of the index was changed

from William W. Handy and Company, Inc., to Handy individually. As complainant does not allege that any material facts were fraudulently concealed, he was as fully aware of his claim in 1929 as he was at the time of the institution of this suit in October 1951. He alleges that he urged the Whitman firm to compile and publish the index, and that the profits of the publication were paid by that firm to Mrs. Handy throughout a period of 18 years from 1932 to 1950. He alleges that he consulted three attorneys between 1932 and 1950, but, despite the fact that Mrs. Handy denied that she was under any legal liability to him, he never took any legal action to assert his claim during that entire period. The doctrine of laches is applicable in this situation. It was 22 years after Handy personally took over the publication of the index, and 19 years after his death, before complainant instituted suit. There was no reasonable impediment or hindrance to the assertion of the alleged claim. It is reasonable to infer that defendants were prejudiced by complainant's long delay.

Complainant called attention to an allegation that Mrs. Handy sold the assets to defendants at a price that indicated that a portion of the assets belonged to him. It was not explained how complainant, who was not a party to the sale, could have known what factors influenced the parties in making the deal. In any event, according to the allegations of the bill of complaint, defendants dealt with Mrs. Handy for 18 years in a way that was openly adverse to complainant's claim. They paid the profits from the index to Mrs. Handy for many years and finally paid her the purchase price unconditionally. We cannot agree that the fact that defendants purchased the assets while aware of complainant's claim was a bar to the defense of laches.

Complainant argued with particular earnestness that the doctrine of laches is not available to fiduciaries on demurrer. It is true that one of the reasons for delay in asserting a claim which may constitute an excuse is the fact that the defendant stood in a fiduciary or con-

fidential relationship to the complainant who, because of that relationship, hesitated to begin proceedings. But that excuse is simply one of the ordinary reasons for delay in asserting a claim. The American Law Institute has pointed out that it is in the same class with other reasons for delay, such as the fact that the defendant fraudulently concealed the facts, or the fact that the complainant could not obtain proper advise or that he was ignorant and did not understand his rights. *Restatement, Restitution,* sec. 148.

In other words, the fact that a defendant stood in a fiduciary or confidential relationship to the complainant does not always constitute an excuse for delay. In *Hammond v. Hopkins,* 143 U. S. 224, 12 S. Ct. 418, 427, 36 L. Ed. 134, where it was alleged that trustees had entered into a fraudulent scheme to appropriate an estate, Chief Justice Fuller declared: "Undoubtedly the doctrine is established that a trustee cannot purchase or deal in the trust property for his own benefit or on his own behalf, directly or indirectly. But such a purchase is not absolutely void. It is only voidable, and as it may be confirmed by the parties interested, directly, so it may be by long acquiescence or the absence of an election to avoid the conveyance within a reasonable time after the facts come to the knowledge of the *cestui que trust.*"

Complainant relied on the decision of the Supreme Court of Minnesota in *Young v. Blandin,* 215 Minn. 111, 9 N. W. 2d 313. But that case was entirely different from the case before us. In that case the president of the corporation took possession of all the corporate property for the purpose of liquidation. The Court held that the president, while acting as liquidator, stood in the position of a fiduciary toward the corporation and all its stockholders, and observed that where a breach of fiduciary duty has occurred, the evidence must be convincing before the aggrieved parties should be barred by laches from asserting a cause of action for breach of such duty. But the value of the assets, after the sale of the property, amounted to more than $5,000,000, and

the president made repeated statements that distribution would be made as soon as expedient, and the Court found that there was no reason why the complainant should have entered suit to compel distribution before he did.

In the instant case the charter of the corporation was forfeited for nonpayment of taxes in 1932, and the president of the corporation died in 1932, more than 19 years before the institution of this suit. The bill of complaint alleges that the executrix of his estate promised to pay complainant for his share in the corporation, but during the next 19 years there was an absolute refusal to pay.

It is unnecessary to pass upon the question whether complainant, as a minority stockholder in the dissolved corporation, would have had the right to obtain an accounting from the purchasers of the assets of the corporation if he had been prompt in asserting his claim. As we are convinced that he is clearly barred from relief by laches, the decree of the chancellor dismissing the bill of complaint will be affirmed.

*Decree affirmed, with costs.*