AVIS F. COMSTOCK v. LORETTA ADAMS, (alias LORETTA COMSTOCK,) et al.

| 23 | 513 |
|----|-----|
| 40 | 612 |

1. DIVORCE, ANNULLED, *Effect of*. When a decree of divorce is set aside and annulled, the marital relations of the parties are placed back in the same condition as they were before the divorce was granted; and it can make no difference that the party to whom the divorce was granted has married in the meantime, or that a child has been born as the fruit of this second marriage — for the courts cannot be divested of their power to set aside decrees of divorce by the subsequent acts of the party procuring the divorce, or by the subsequent acts of third persons.

2. AGREEMENT, *When Void*. Where a divorce is wrongfully obtained, a subsequent agreement between the parties that it shall not be disturbed is against public policy, and void.

33 — 23 KAS.

3. WILL OF HUSBAND; *Right of Wife.* A husband has not the power to exclude by will, against the consent of his wife, her right to receive, after his death, one-half of his property, real and personal, although she may never have been a resident of Kansas.

4. DIVORCE; *Jurisdiction; Presumption.* Where it is shown that a court of a sister state possesses general jurisdiction, including the power to grant divorces, and such a court grants a divorce, and then sets the same aside, it will be presumed, in the absence of anything to the contrary, that such court had the power and jurisdiction to set aside said divorce.

### *Error from Marion District Court.*

ACTION brought by *Avis F. Comstock,* against *Loretta Adams,. alias* Loretta Comstock, and others, to set aside a certain will executed by Ira Comstock, and to procure a decree declaring the said *Avis F. Comstock* to be the owner of one-half of all the property, real and personal, of which the said Ira Comstock died seized. The court below made the following findings of fact and conclusions of law, and rendered the following judgment, to wit:

"1. That Ira Comstock and Avis F. Comstock were married in the state of New York, in 1844, and lived together as husband and wife until the year 1862, when they separated in the state of New York. The result of such marriage was four children, named respectively Hiram Frank, Emma, Jennie, and Willie, who are defendants herein.

"2. That in 1865, Ira Comstock removed to the state of Michigan, from the state of Pennsylvania, and settled in Van Buren county in said state, and in a few weeks thereafter the defendant, Loretta Adams, removed from the same place in the state of Pennsylvania and settled in Van Buren county, Michigan, at or near the residence of Ira Comstock.

"3. That the said Ira Comstock and Loretta Adams, *alias* Comstock, after such settlement in Michigan, lived together until their subsequent marriage, as hereinafter found.

"4. That on January 2, 1867, by a decree of the circuit court of Van Buren county, Michigan, upon service by publication against said Avis F. Comstock, said Ira Comstock was upon his bill divorced from said Avis F. Comstock.

"5. That on January 8, 1867, the said Ira Comstock and Loretta Adams, or Comstock, were married in Van Buren county, Michigan, the issue of which said marriage was three

children, named respectively, Fred, Dick and the 'baby,' who are defendants herein.

"5½. That on the 13th day of September, 1867, after Ira Comstock had obtained his divorce, and before any proceed-. ings had been taken to reverse the same, and after he and Loretta Adams were married, the said Ira and Avis F. Comstock entered into a written agreement, the terms of which were, that for the sum of $500, to be paid to Avis by Ira, Avis F. Comstock agreed to surrender her right and interest in and to the property, personal and real, of the said Ira, and also agreed to take no steps or proceedings, nor to institute any suit to invalidate, set aside or annul the divorce granted to Ira, or the marriage between Ira and Loretta; that Ira paid $75 on said contract, and executed a mortgage to Avis for the remainder, which afterward turned out to be worthless, and no further payment of said sum of $500, other than the $75, has ever been made or tendered by Ira.

"6. That on October 21, 1868, by proceedings had in said circuit court of Van Buren county, Michigan, on the chancery side thereof, being the same court in which the aforementioned decree of divorce was granted, (which proceedings were substituted and filed in said court on the first day of November, 1867,) said decree was, upon and after personal service and notice to said Ira Comstock, upon the application of said Avis F. Comstock, set aside and annulled. ·

"7. That in 1871, Ira Comstock and Loretta Adams, or Comstock, removed to Marion county, Kansas, and continued to live together there as husband and wife, until his death, as hereinafter found.

"8. That said plaintiff, Avis F. Comstock, has never married since the separation of herself and said Ira Comstock.'

"9. That said Ira Comstock died, in Marion county, Kansas, November 12th, 1875, leaving a will, a true copy of which is annexed to plaintiff's petition, which said will has been duly admitted-to probate in said Marion county, Kansas.

"10. That said Ira Comstock died seized of personal property to the amount of $1,355.65.

· "11. That said Ira Comstock died seized of certain real estate situate in Marion county, Kansas, part of which was a homestead under the laws of the state of Kansas, and that such homestead was occupied by himself and Loretta Adams, alias Comstock, and their children, Fred, Dick, and the 'baby,' and Hiram Frank, a son of himself and Avis F. Comstock.

"12. That said real estate was the accumulation of the

joint labor, service and money of said Ira Comstock and Loretta Adams, *alias* Comstock.

"13. That said Loretta Adams, or Comstock, was not a party in any way or manner in the procurement of the divorce of Ira Comstock from Avis F. Comstock.

"14. That said plaintiff, Avis F. Comstock, never has consented in writing or otherwise to any of the terms of said will of said Ira Comstock.

"15. That said plaintiff, Avis F. Comstock, has never been a resident of the state of Kansas.

"16. That said defendant, Loretta Adams, *alias* Comstock, is the executrix of said last will and testament and of the estate of said Ira Comstock."

From which said matters of fact the court concludes:

"1. That the marriage of Ira Comstock and Loretta Comstock was a valid marriage within the jurisdiction of the state of Michigan, until the same was set aside and annulled by the proceedings had by Avis F. Comstock.

"2. That upon the annulment and setting aside of said decree of divorce, the marriage of said Ira and Loretta Comstock, or Adams, was set aside and annulled, and the relation of husband and wife between said Ira and Avis restored, and the same thereafter continued to exist until the time of said Ira's death.

"3. That by reason of the non-residence of Avis F. Comstock in Kansas, Ira Comstock had the right to exclude her from any interest in his real estate in Kansas, by will.

"4. That by reason of the joint occupancy of Ira Comstock and Loretta Adams, or Comstock, in the homestead, and the non-residence of Avis F. Comstock, Ira had the right to devise said homestead by will to said Loretta.

"5. That by reason of the real estate having been the joint accumulation of the money and labor of Ira Comstock and Loretta Adams, or Comstock, the said Ira had the right to devise the same to said Loretta to the exclusion of said Avis, she being a non-resident of the state of Kansas.

"6. That the said plaintiff, Avis F. Comstock, as the widow of said Ira Comstock, is entitled to a selection from the personal estate of said Ira Comstock of the property allowed her by § 49, ch. 37 of the general statutes of this state, and in addition thereto, one-half of the remainder of said personal property not necessary to the payment of the debts of said decedent."

The court therefore "considered, ordered and decreed that said will of said Ira Comstock, and the probate thereof, be, as to said plaintiff, Avis F. Comstock, set, aside as to the personal estate belonging to him at the time of his said death, and she, the said Avis F. Comstock, is hereby decreed to be the owner of all the property allowed by law to her as the widow of said Ira Comstock; and it is further decreed that the said defendant, Loretta Adams, as the executrix of said will and testament and said estate of said Ira Comstock, shall pay or deliver to said plaintiff, in the due and proper course of her execution of said estate, the aforesaid personal property; and it is further ordered that said plaintiff do pay one-half the costs of this action, taxed at $——, and the said defendant, Loretta Adams, *alias* Comstock, do pay the remaining half of said costs, taxed at $——. To all of which conclusions of law and judgments, orders and decrees of said court, the said plaintiff and said defendants each respectively and severally, at the time of their making and rendition, duly excepted."

To reverse the foregoing judgment, the plaintiff now brings the case to this court.

*Buck & Kellogg*, and *Frank Doster*, for plaintiff in error:

1. It is immaterial whether the plaintiff in error was a *bona fide* resident of Kansas, or not. Section 8, ch. 33 of the Gen. Stat., has no reference to wills. The proviso of said section shows, in terms, that it has no restrictive force except as to land to which the husband "has made a conveyance," thus speaking of a time prior to a will. While a will may, by operation of law, transfer, by action of the court, real estate, a will can have no effect till after the testator's death. Sec. 17, ch. 33, provides for a will, and says the widow's portion cannot be affected by any will of her husband, etc. And here, if at all, the exception as to residence should come in. These provisions must be construed in connection with §§ 1 and 35, ch. 117, Comp. Laws 1879, where the subject of wills is treated. Sec. 1 provides for *only* the exceptions found in

ch. 117, and non-residence is not therein. Sec. 35 is a positive restriction in favor of the widow, and again there is no question of residence. Any other construction than the one which we claim would be senseless and barbarous.

A will is not a conveyance. (Webster's Dict., words "Will," "Conveyance;" 2 Bl. Com., Book 2, pp. 309, 318; 4 Kent's Com.; 9 U. S. Dig. 223.)

2. When a person gets a divorce, he takes it subject to any action thereafter duly had in the case, and when it is reversed, it is to all intents and purposes the same as if no divorce had ever been granted. (Bishop on Mar. and Div. 699; 11 Kas. 123.)

When a man leaves his own and his wife's common domicile and goes into a foreign jurisdiction to get a divorce, and there, by constructive service, and in fraud of the rights of his deserted wife, goes through the motions of getting one fraudulently, and it is attacked within the time prescribed by law, he takes nothing by his fraudulent decree; and when, as in the case at bar, it is set aside, upon personal notice to him, and he takes no appeal, then, as a conclusion of law, there was never a moment when there was a valid divorce; and this is true, even if a marriage has taken place in the meantime. (62 Pa. St. 308; 51 N. H. 388; 46 id. 518; 14 id. 203; 31 id. 287; 43 id. 313, 508; 4 id. 115; 108 Mass. 590; Bishop on Mar. and Div., 4th ed., §751, and cases cited; 2 Kent's Com., 11th ed., 109; 14 Mass. 227; 2 Gray, 367; 9 Greenl. 140; 1 Johns. 424; 12 Pa. St. 328; 35 Vt. 365; 26 Mo. 163; 20 id. 168; 20 Wis. 500, 268; 30 id. 668; 31 id. 250; 4 Lans. 388; 63 Me. 420, 423; Freeman on Judgments, 584; 6 Minn. 458; 25 N. J. Eq. 60; 2 Wait's Actions and Defenses, 615; 3 Am. Law Reg. 208, et seq.)

3. The 3d, 4th and 5th conclusions of law are erroneous, and, so far as they involve the question of residence, have already been anticipated. As to the "joint occupancy" of this woman with plaintiff's husband, this is what we complain of. There has been too much of that already. There was no law by which this woman can assume to occupy the

plaintiff's land. No clearer case can be cited of one taking advantage of her own wrong. It is not a question as to whether as an occupying claimant she may or may not have rights. Plaintiff demanded to be recognized as a widow—a fact which the court below finds, but denies her any interest in the realty because she was a non-resident when this will was made.

4. Defendant heretofore contended that the court in Michigan could not legally set aside the divorce. This we deny. It was a court of general equity jurisdiction, and like all such courts, could protect its records from fraud and itself from imposition. The defendant will not be prepared to say it had not jurisdiction of divorces, for it was the same court that granted the divorce, which, poor as it is, is the only thing which has shielded her all these long years, and stood between her and the penitentiary. The court in Michigan did set aside the said divorce, upon *personal* notice to Ira Comstock, and he and all claiming under him are forever estopped to question such power. That action cannot now be collaterally attacked.

5. No kind of evidence, and no amount of evidence, could justify the finding of fact, numbered $5\frac{1}{2}$, and it is immaterial, irrelevant, and incompetent, and if admitted, is not, and cannot be, any defense in this action. That contract is against public policy, and totally void. We are not asserting it. A stranger to us, and one who is not an heir-at-law, asserts it. This contract was made September 13, 1867, and that was the first time this plaintiff knew of the divorce. Not until November 1, 1867, did plaintiff take the first step toward setting aside that fraudulent divorce. If such contract was in any sense a waiver of anything, or a defense in any manner, Ira Comstock should then have insisted upon it, and doubtless did, for he was intensely interested in sustaining that divorce. It must be presumed that he offered this so-called contract in evidence, and that his frauds were so glaring that the chancellor regarded this contract as an additional evidence of fraud. If the divorce part of that contract was void, all

was void. (14 Johns. 458; 6 Hill, 438; 3 Pa. 83; 3 Scam. 417; 17 Vt. 390; 1 Ind. 405; 2 Mich. 445; 2 Minn. 264; 4 Johns. 264; 7 Cal. 355; 12 Pick. 388; Chitty on Contracts, 371, and cases cited; Bishop on Mar. and Div., 3d ed., 301 and 314, 529, 699, and 734.)   See also 2 Bishop on Mar. and Div., 5th ed., ch. 16; 5 Kas. 391; 8 id. 665; Comp. Laws of Mich. (1857), p. 955, § 12; p. 1009, § 21; p. 1020, §§ 91, 92; 6 Wait's Actions and Defenses, 805, 810; 40 Iowa, 230; 46 id. 431, 648; 2 Wright (Pa.), 241.

*J. G. Waters,* for defendants in error:

But few questions are presented to be decided by this court, and these, from my standpoint, I believe are as follows: *First,* Does a marriage remain valid, after decree rendered, leaving the party fully competent to marry, upon and after review of the decree of divorce, and its annulment?   *Second,* Is not the contract made between Ira Comstock and Avis F. Comstock a valid one, and does it not conclude the plaintiff in error in this action?   *Third,* Had not Ira Comstock the right to exclude, by will, his first wife, Avis F. Comstock, from participation in his real estate, she having always been a non-resident of the state of Kansas?   *Fourth,* What authority has the Michigan court to set aside the divorce?

As to the first question: See *Warner v. Warner,* 11 Kas. 121; *Allen v. McClelland,* 12 Pa. St. 328.

As to the second question: This contract was made at a time when Avis and Ira were strangers to each other.   The divorce had been obtained, and they occupied at the time no relationship to each other; they were at the time competent to make any sort of a contract; Avis knew of the divorce, and knew that Ira had again married; and with this information she made the contract.   The other side can offer no reason why this contract is not a valid one, and even if Ira and Avis had been, at the time of the contract, husband and wife, the contract between them would be good enough to bar her from asserting any rights to his property, had they continued to live together, and regardless of the conclusions of law of

the court below, in which it wholly ignored this contract. I look upon it as conclusive of this case.

It may be urged that this contract is against public policy and good morals, for such was the reason stated by the court below, and repeated by counsel in this court.. There never was a contract produced in court, that had more of the elements of good morals in it than this has, or more powerful reasons to support it on the grounds of public policy. Avis F. Comstock, at the time she made the contract, was a stranger to Ira, and only had, so far as he was concerned, a right to review a case already concluded, which, as a fact, is not even admitted. On the other hand, here was a man and wife, whose whole *status* was to be fixed and determined by the acts of Avis, in proceeding or not with such review. Their relations of husband and wife were then legal, and the contract had, as it expressly stated, direct reference to the continuance of such legal and reputable relations. For a fair consideration, with a knowledge of all the facts, she solemnly agrees that she will not disturb those relations, nor seek any further benefit from the property of her former husband, and determines to abandon her right to review the civil action already determined.

As to the third question: Section 8 of the act relating to descents and distributions provides that the wife shall not be entitled to any interest in any land to which the husband has made a conveyance when the wife at the time of the conveyance is not, and never has been, a resident of the state. It appears that Avis never was a resident, and the only thing to be considered in this regard is, whether a will is a conveyance under the foregoing section. In my belief, the term conveyance is used in its broad and general sense, and a man under our laws can convey his property by will as effectually as by any other mode. Our statute of wills gives express authority to any person of full age and sound mind to give and devise to any other person real and personal property by last will and testament, and he could do no more by deed.

As to the fourth question: There was nothing offered in

evidence tending to show in the most remote degree the laws of Michigan and the power of its courts to review decrees of divorce. Simply the decree of review was introduced, and nothing else. The record is not proven or given. The laws of Michigan, like any other facts, should have been proved. The right to review decrees of divorce is not inherent in courts of general jurisdiction. Some have such right, and to others it has been denied. (*Lewis v. Lewis*, 15 Kas. 189.)

The opinion of the court was delivered by

VALENTINE, J.: As this court is inclined to agree with the plaintiff in error in this case, it will be proper for us to set forth and discuss the questions which the defendants in error claim are involved in the case. Such questions are as follows:

"*First*, Does a marriage remain valid, after decree rendered, leaving the party fully competent to marry, upon and after review of the decree of divorce and its annulment? *Second*, Is not the contract made between Ira Comstock and Avis F. Comstock a valid one, and does it not conclude the plaintiff in error in this action? *Third*, Had not Ira Comstock the right to exclude, by will, his first wife, Avis F. Comstock, from participation in his real estate, she having always been a non-resident of the state of Kansas? *Fourth*, What authority has the Michigan court to set aside the divorce?"

The answers to all the foregoing questions must, as we think, be against the plaintiff.

I. Upon principle and authority, the first question must be answered in the negative. (2 Bishop on Mar. and Div., §§ 753, 753a; *Crouch v. Crouch*, 30 Wis. 667.) When a decree of divorce is set aside and annulled, the marital relations of the parties are placed back in just the same condition as they were before the divorce was granted, and it can make no difference that the party to whom the divorce was granted has married in the meantime, or that a child has been born as the fruit of this second marriage; for the courts cannot be divested of their power to set aside decrees of divorce by the acts of the party procuring the divorce, or by the acts

of third persons. All persons are bound to know the law, and all persons are bound tó know the power of courts to set aside and annul decrees of divorce; and knowing all this, if any man and woman (one of whom has been wrongfully divorced from a former husband or wife) choose to take the hazardous risk of being married to each other before the divorce has become final and conclusive by lapse of time, such man and woman must be prepared to endure all the consequences of a final revocation and annulment of the decree of divorce, provided such decree shall ever be annulled. A party to a decree of divorce obtained by fraud cannot defeat the power and jurisdiction of the court to set aside such decree by consummating a second marriage on the next day after the decree is granted, and the person to whom such party is married has no more power to defeat the exercise of the jurisdiction of the court in such cases by such a hasty marriage than the party has. There can be no innocent parties in such cases. In the present case, the second marriage was consummated in just six days after the decree was rendered. Where a decree of divorce is rightfully and properly obtained, there is no danger of its ever being set aside or vacated. It is only where the decree has been wrongfully or fraudulently obtained, that it may be set aside.

II. Said contract between Ira Comstock and Avis F. Comstock was against public policy, and therefore void. Even Ira Comstock himself seems to have thought so; for, after paying the $75 which he paid at the time of making the contract, he forever abandoned the contract, and never afterward fulfilled any of its terms. Said contract was against public policy, and void, because the principal consideration therefor was, that Avis F. Comstock should refrain from all disturbance or molestation of said decree of divorce, which decree of divorce (it must be presumed from the fact that it was afterward set aside) was obtained illegally and wrongfully. As society has an interest in marriages and divorces, the public will not allow individuals to make valid

contracts to uphold and sustain illegal and fraudulent divorces. Probably no estoppel could be set up in any case, and certainly not in this case; for in this case the second marriage was had long before this contract was made, and not in pursuance thereof.

Now while we think that said contract was void, still would the defendants be in any better condition if it were valid? If it were valid, then Ira Comstock should have interposed it as a defense to the plaintiff's proceeding to set aside said decree of divorce. Whether he did so interpose or not, we cannot tell from the record brought to this court; but, whether he did or not, we think the judgment setting aside said decree of divorce is equally conclusive against him, and that judgment virtually overturns and destroys the contract. Although Avis F. Comstock agreed that she would not disturb said decree of divorce, yet she in fact did disturb it, and the decree was set aside; and that is the end of the matter. When the decree was set aside, she again *became the wife of Ira Comstock, with all the rights, privileges and duties of other wives.*

III. We do not think that Ira Comstock had the power to exclude by will, and against the consent of his wife, Avis F. Comstock, her right, after his death, to one-half of his property, real and personal, although she may never have been a resident of Kansas; and we think the statutes conclusively settle this question. (Secs. 8, 17, 31 and 32 of the act relating to descents and distributions, Comp. Laws of 1879, pp. 379, 380; §§ 1 and 35 of the act relating to wills, Comp. Laws of 1879, pp. 1001, 1004.) The word "conveyance," as used in the proviso of said § 8, clearly does not include a will. A will is never a conveyance. A conveyance operates in the lifetime of the grantor, while a will does not operate until after the death of the maker. Of course, death transfers all property, and a will says where it shall go; but this does not render a will "a conveyance," "which the husband has made." It is the death that transfers the property. Besides, if we should hold that the will and death taken together constitute

" a conveyance," " which the *husband has made,*" under said § 8, we would overturn other provisions of the statutes contained in said §§ 17 and 35.   This we cannot do.

IV.  In the absence of anything to the contrary, it must be presumed that the Michigan circuit court, which granted and set aside said divorce, had ample authority and jurisdiction to do the same.  (*Dodge v. Coffin,* 15 Kas. 277, 280, 284–287.)  It was a court of general jurisdiction; (Mich. const., article 6, § 8;) and presumptively, it had sufficient jurisdiction to set aside one of its own decrees.  Besides, the evidence introduced in the court below may have shown conclusively that it had such jurisdiction.  None of the evidence has been brought to this court, and therefore we cannot say that it did not so show.

It follows from the foregoing, that the plaintiff, Avis F. Comstock, is entitled to one-half of all the property of Ira Comstock, deceased, not necessary for the payment of debts. The other half of said property should be disposed of in accordance with the terms of the said will of Ira Comstock.

The judgment of the court below will be reversed, and cause remanded for further proceedings in accordance with this opinion.

All the Justices concurring.