SALOME B. CROYLE *v.* ANN STARKEY CROYLE

[No. 50, October Term, 1944.]

*Decided December 21, 1944.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, BAILEY, CAPPER, and HENDERSON, JJ.

*Louis B. Arnold* for the appellant.

*Bird H. Dolby* for the appellee.

MELVIN, J., delivered the opinion of the Court.

This is a suit by the appellant to nullify, on the ground of fraud, a decree of divorce obtained in the Circuit Court for Prince George's County on November 2, 1937, by her late husband, Charles R. Croyle, a Spanish-American War veteran who died in May, 1943. The avowed object of the suit is to obtain adjudication that the appellant, and not the appellee, is the "lawful widow" of the said decedent and therefore entitled to property rights in his estate, particularly the right to a pension as the widow of

a war veteran. The appellee's demurrer to this bill was sustained without leave to amend, and it is from this decree that the present appeal was taken.

The allegations of fact upon which the decision of the case rests are set out in the bill as follows: The plaintiff and the decedent (Croyle) were married on December 31, 1901, and as a result of said marriage five children were born, four of whom are now living and are of adult age. Following said marriage the parties lived in various places until 1924, when they finally established a permanent home in the District of Columbia. They lived together at the premises 231 Massachusetts Avenue N. E., Washington, D. C., until December 8, 1934, at which time, due to the cruel treatment of the decedent toward the plaintiff, they entered into a separation agreement, according to which the decedent moved away and agreed to contribute to the support and maintenance of the plaintiff and their children. At the time of this agreement decedent was employed at the Government Printing Office and also received a pension as a veteran of the Spanish-American War. He complied with said agreement from its date until January 15, 1938, when plaintiff received a copy of a purported divorce obtained by him on November 2, 1937, in the Circuit Court for Prince George's County.

The allegations contained in the bill filed by said decedent were fraudulent in that the bill alleged, among other things, that the plaintiff had deserted the decedent in July, 1934; whereas, in truth, the said separation was mutually agreed upon in writing as of December 8, 1934. The matrimonial domicile of the parties at the time of said proceedings was in the District of Colmbua. At the time decedent filed said suit he knew that plaintiff was residing at 231 Massachusetts Avenue, N. E., Washington, D. C., as evidenced by the testimony now on file in this Court, but notwithstanding the same he caused notice of his suit to be published in a Prince George's County newspaper which he had every reason to believe neither the plaintiff nor her friends would see, in order

to conceal from her knowledge of the proceedings, and plaintiff did not receive any knowledge of said proceedings until two months after the decree of absolute divorce was signed. The testimony and the service had in connection with the procurement of the aforesaid divorce were fraudulently obtained. The bill further alleged that the decedent could easily have served her at her Washington address where she had resided for nearly twelve years prior to the filing of the suit.

Immediately upon hearing of said absolute divorce, plaintiff instituted proceedings against the decedent in the District of Columbia for a limited divorce and to set aside the decree obtained in Maryland . After a lengthy trial the Court made certain findings of fact and conclusions of law, as shown by the certified copy attached to the bill as a part thereof, marked "Exhibit A", and on November 10, 1939, the said District Court entered a judgment awarding the plaintiff a divorce *a mensa et thoro* and ordering the decedent to pay to her the sum of $25 a month as alimony, a certified copy of said judgment being attached to the bill as a part thereof marked "Exhibit B".

Among the findings of fact set forth in Exhibit A are the following: "(2) That the defendent, Charles R. Croyle, is guilty of cruelty in his conduct toward his wife, especially in view of his admitted association and misconduct with other women between the years 1928 and 1934; (3) * * * That although he (defendant) knew plaintiff's address, he made no effort to inform her of the pendency of said suit; that the plaintiff had no notice whatsoever of the pendency of this suit; that the grounds upon which he obtained the divorce in Maryland were fraudulent and untrue; * * * that the plaintiff, Salome Croyle, has always resided, and still resides, at 231 Massachusetts Avenue, N. E., and never deserted the defendant herein."

The allegations of the bill further show that the decedent complied with the order of the District Court, as aforesaid, and made regular payments until his death

during the latter part of May, 1943. The plaintiff entered her suit for a limited divorce against decedent because she desired to protect any property rights she might have in any estate left by him, and particularly did she desire to protect her right to a pension as the widow of a Spanish-American War Veteran, should she survive her husband. She was advised by her counsel that the judgment in the District of Columbia superseded the Maryland decree, and further, the compliance of decedent with the order of the judgment of the Court in the District of Columbia lulled her into the assurance that her property rights were protected.

While the suit against decedent was pending in the District of Columbia, the defendant in the instant case, Ann S. Croyle, entered into a marriage with decedent and continued to live with him even after the judgment in the District Court. The decedent, Charles R. Croyle, died May 25, 1943, intestate, and, without notice to the plaintiff or her children, the said defendant filed a petition for letters of administration in the Orphans' Court for Prince George's County and was appointed administratrix on July 27, 1943. Subsequent to the death of her husband the plaintiff made claim with the Pension Bureau of the Veterans Administration of the United States for a pension as the widow of a deceased Spanish-American War veteran, but said claim was rejected on the ground that her husband's decree of divorce in the Circuit Court for Prince George's County on November 2, 1937, was a bar to granting such claim until vacated or set aside by the Court granting the same.

The plaintiff has substantial property rights involved in this proceeding through her dower interest in the estate of the decedent, along with her claim for a pension, and such property rights would enure to her benefit but for the fraud that has been practiced, as therein detailed.

Having made the aforegoing allegations of fact, the plaintiff, thereupon, prayed the Court to vacate, set aside and nullify the aforesaid decree of absolute divorce obtained by the decedent on November 2, 1937, and to

declare her to be the lawful widow of the said Charles R. Croyle, deceased. The other prayers of the bill are that the defendant, Ann S. Croyle, be removed as administratrix of said decedent and the plaintiff be substituted in her place, that the defendant be required to turn over to the plaintiff, as administratrix, all assets of the estate of the said decedent, and for further relief.

To this bill of complaint the appellee demurred generally, setting forth numerous grounds. However, only two of these are applicable to the determination of this appeal, inasmuch as the Chancellor's decision to sustain the demurrer and dismiss the bill, without leave to amend, was based on them, exclusively. As classified in his scholarly opinion appearing in the record, the two grounds are:

"(a) That this original bill for fraud does not set forth a case which entitled the plaintiff to any relief in equity"; and,

"(b) That the plaintiff is barred by laches and estoppel from relief in this proceeding".

We cannot agree with the learned Chancellor in sustaining these two points, or either of them. Considering, first, the allegations of fraud, we find that the bill of complaint presents a factual situation which, if proved, clearly calls for the intervention of equity. The case before us on the record is that of a husband and wife, who, having lived together for over thirty-two years and having had five children, are forced to separate in December, 1934, because of the cruelty and misconduct of the husband. The innocent party, the wife, remained in their permanent home in Washington and the husband regularly made the payments required by the separation agreement for the support of his wife and children. Thereafter, in 1937, he is shown to have actually brought a suit for absolute divorce against the aggrieved wife charging *her* with having abandoned *him* in July, 1934, when, as a matter of fact, they had not separated at all until December, 1934, and then only because of his own misconduct, and when, moreover, she had continued to

reside in the same home in Washington where they had lived together since 1924, and where she still resides.

Not only was this basic allegation of abandonment undeniably false but, as still further indicative of the husband's deliberate fraud in bringing this divorce action, he concealed from her all knowledge of the suit, although he knew exactly where to reach her, namely, at her permanent Washington residence, aforesaid. Notwithstanding this admitted knowledge he failed to take advantage of the Code provision (Article 16, Section 149) which would have permitted him to have obtained personal service upon the defendant, instead of following the time-taking and expensive procedure of publication. By way of aggravation of the fraud, he chose a newspaper, according to the bill here, "which he had every reason to believe neither plaintiff nor her friends would see, in order to conceal from her knowledge of the proceedings." We consider it in order to say here that such a crafty maneuver as this—not infrequently resorted to by the plaintiff in cases of a dubious character, is always repugnant to a court of Equity, and, of itself—gives a taint of suspicion and fraud to the cause of any party who employs it. In point is the case of *Adams v. Adams*, 51 N. H. 388, 12 Am. Rep. 134.

Immediately upon learning of this absolute divorce obtained by fraud, as alleged, the wife instituted proceedings in the District of Columbia to have it annulled, the choice of that forum being on advice of her counsel. The husband appeared to that suit, was represented by counsel, gave testimony and submitted to a full trial of the case on its merits. Right while this proceeding was pending attacking the original divorce, the husband and Ann Starkey Croyle, the defendant and appellee in the instant case, were married, and notwithstanding the final decree in favor of the plaintiff, from which the defendant there did not appeal, continued to live together until his death in May, 1943. The husband, moreover, abided by the order of the District of Columbia Court dated November 10, 1939, which required him to pay his wife

(the appellant here) $25 per month as permanent alimony, and continued to make these payments as long as he lived. It was not until the Pension Bureau raised the point about the marital status of the appellant that she was confronted with the necessity of directly attacking the divorce decree of November, 1937, and of doing so in the same court which awarded it.

In her own suit in the District of Columbia the plaintiff had sought, and obtained a limited divorce, only, her special purpose there being, according to her present bill of complaint, to protect her right to a pension as the widow of a deceased veteran. Promptly upon receiving this notification from the Pension Bureau, the appellant brought the pending suit.

The facts alleged in the bill of complaint now before us, and admitted by the demurrer, show clearly that the decree of divorce in question was obtained by fraud, and, if proved, would clearly entitle the innocent spouse to relief in equity, as prayed. It is an established principle of jurisprudence that Courts of Equity, no less than courts which proceed according to the course of the common law, have the power, in an appropriate proceeding, to vacate their judgments and decrees whenever it appears that an innocent party has been aggrieved by a judgment or decree obtained against him, without his knowledge by the fraud of the other party. *Edson v. Edson*, 108 Mass. 590, 597, 11 Am. Rep. 393; *Bishop, Marriage, Divorce and Separation*, 1891 Ed. Vol. 2, Sec. 1552, Note 3.

This principle is founded too, on natural justice, and the application of it—in equity especially—has been universally recognized by the courts as a duty in counteracting and defeating fraud practiced upon them, as well as upon innocent litigants. *Bishop*, supra, Sec. 1551.

In the case at bar the allegations of the bill show a deliberate violation of both the letter and the spirit of the principle; for it is apparent on the face of the record that the decedent's case for divorce from the appellant would have inevitably met with defeat if she had contested it. It was obviously his purpose, therefore, to

prevent her from doing so, by the simple expedient of keeping her in total ignorance of it. He accomplished this purpose, the bill alleges, by deliberately not giving her actual notice, although he admittedly knew her address, and by giving the constructive notice through a newspaper which he had every reason to believe neither she nor her friends would see.

It is difficult to conceive a plainer case of fraud than that charged against the decedent here. First, the divorce suit brought by him in 1937 on the ground of abandonment was based on transparently false allegations—he had admitted in writing that the separation was caused by his own cruelty and that the wife had continued to live at their former home—and, second, he deliberately concealed knowledge of this suit from his wife, the really aggrieved party, thus enabling him to consummate his fraudulent purpose.

The aforegoing facts disclosed by the bill and exhibits show, in our opinion, much more than mere "color of fraud," as determined by the Chancellor in sustaining the demurrer to the bill. They show actual fraud which, if established by proof, would nullify the decree which was obtained by reason of it.

Nor is the rule of law applicable here affected by the remarriage and subsequent death of the defrauding party. The rule as to the first point in thus summarized in 17 Am. Juris. *Divorce and Separation,* Par. 461: "However, it is almost universally held that the remarriage of the spouse who obtained a decree of divorce from the former spouse is not of itself a sufficient reason for denying relief to the latter in a suit or other proceeding to have the decree vacated or set aside. In other words, the power of the court to set aside a decree of divorce cannot be taken away by the act of the party who procured it in marrying again." *Lawrence v. Nelson,* 113 Iowa 277, 85 N. W. 84, 57 L. R. A. 583; *Comstock v. Adams,* 23 Kan. 513, 33 Am. Rep. 191; Annotation, L. R. A. 1917 B, 489, 490.

As to the effect of the death of one divorcee upon the right of the survivor to attack the decree on the ground of decedent's fraud, this Court has held, as correctly pointed out by the Chancellor, that where property rights are involved, as they are here, the rule is that a surviving spouse may bring such a suit. This was the effect of the decision on this point in *Scheihing v. B. & O. R. R. Co.*, 180 Md. 168, 23 A 2d. 381, and authorities therein cited.

Coming now to the second point of the demurrer upon which the Chancellor based his decree, namely, laches and estoppel, we likewise find no bar to the appellant's right to relief in equity. The very heart of the doctrine of estoppel, through laches, is that the defendant's alleged change of position for the worse must have been induced by, or resulted from, the conduct, misrepresentation or silence of the plaintiff. 19 *Am. Jur. Estoppel*, P. 732, Par. 84. As expressed in the last cited authority: "Not only must the party claiming an estoppel have believed and relied upon the words and conduct of the other party, but also he must have been thereby induced to· act, or to refrain from acting, in such a manner and to such an extent as to change his position or status from that which he would otherwise have occupied. * * * Nor can one who has already irrevocably changed his position claim an estoppel based upon representations made after the change took place."

The doctrine of laches is an application of the general principle of estoppel, and in legal significance involves not mere delay but a delay that works a disadvantage to another. *Oak Lawn Cemetery v. County Com'rs of Baltimore County*, 174 Md. 280, 289, 198 A. 600; *Pomeroy's Eq. Jur.* Vol. 4, Sec. 1440; *Boehm v. Boehm*, 182 Md. 254, 269, 34 A. 2d 447; *Spangler v. Dan A. Sprosty Bag Co.*, 183 Md. 166, 36 A. 2d 690; *Cearfoss v. Snyder*, 182 Md. 565, 35 A. 2d 235, 237.

In the record before us there is not only nothing to show that any words or conduct of the plaintiff caused the appellee to change her position or status but, on the contrary, the bill shows that the latter had changed her

own position by marrying the decedent and doing so while the Maryland decree was under attack, and over a year before the passage of the District of Columbia decree upholding appellant's claim. Nothwithstanding this proven fraud, established in a case in which the decedent actively participated as the party defendant, and did not take an appeal, the appellee here continued to live with the decedent as his wife.

It is obvious from the allegations of the bill that the appellee married the decedent, completely regardless of the appellant. It is contrary to all reason to assume that the appellee was ignorant or oblivious of the fact that the man with whom she was living as husband and wife was involved in a contested divorce case which so vitally affected her own marital status. All this time, beginning on January 15, 1938, when she first heard of the Maryland decree, the appellant herself was making it plainly and publicly known, as a matter of record, that she claimed to be the wife of Charles R. Croyle. In the face of this attitude and conduct of the appellant, the appellee chose to go ahead and marry him, anyhow. She cannot be heard now in a court of equity to complain that her position has been changed for the worse because of anything that appellant did or said.

Even assuming that she is an innocent third party and is now called on to defend this suit when the real defendant is dead, her rights in this matrimonial triangle are no greater than his would have been in meeting these allegations of fraud. In dealing with this kind of a question in a case where the husband instead of the wife, as here, was the aggrieved party, the Court, in *Allen v. Maclellan,* 12 Pa. 328, 331, 332, 51 Am. Dec. 608, used the following appropriate language: "But the legitimate husband also has rights; and if any one must suffer from the invalid marriage, it is he who procured it. By the terms of the contract, he (the second husband) took the lady for better, for worse; and having assumed at least her moral responsibilities, he stands as to hardships in her place. He, therefore, has no right to complain."

*Bishop,* supra, Par. 1550. Moreover, it was conceded in the argument of this appeal that there is available for the purposes of the instant suit the verbatim testimony of the decedent and his witnesses, as given by them in the District of Columbia proceedings hereinbefore mentioned.

Fraud on the part of the decedent in procuring the original divorce is the gravamen of the present suit, as it was of the former, and the appellee is in no position to dispute the right of the aggrieved spouse to seek the aid of a court of equity in establishing that fraud. Certainly the former will not be allowed to profit by it, if proven, by becoming the beneficiary of his property to the exclusion of his lawful widow.

The decree of divorce now under attack is the same decree which the appellant has consistently disputed and contested ever since she heard of it in January, 1938. She was guilty of no delay whatever in asserting her position in this marital entanglement, and if she had brought her suit in Prince George's County in 1938, instead of in the forum of her own domicile, as she was advise by counsel to do, there would, of course, have been no suggestion of laches or estoppel. This defense is no more available now than it would have been then, for the essential element to support it is equally lacking. That is to say, at no stage of these proceedings have the words or conduct of the appellant been responsible, according to the allegations of the bill, for any change in the position or status of the appellee. The appellant has already established to the satisfaction of the District of Columbia Court that the original decree of divorce against her was procured by fraud. She is now seeking the opportunity of proving it to the satisfaction of the same Court which granted the decree. Under the facts and circumstances alleged in the bill, the delay in taking this second proceeding does not amount to laches and is not sufficient, in itself, to cause the dismissal of her bill of complaint. See *Simms v. Simms,* 178 Md. 350, 13 A. 2d 326, which is a case strikingly in point in this connection, both as to facts and as to the applicable law.

Laches implies negligence in failing to assert one's rights within a reasonable time after their discovery or, in a case of attacking a proceeding on the ground of fraud, after the discovery of the fraud. The law does not require infallibity on the complainant's part in selecting the correct forum for the trial of his case, and if promptly and in good faith, he proceeds in the jurisdiction where he resides, on the advice of counsel, he is not chargeable with negligence simply because the advice was unsound and he is required later to renew his attack in another court. This is especially true when, as in the case at bar, the bill shows that the defendant's position was not changed or affected in any respect because of the time of bringing either suit, or because of anything the complainant did, or failed to do.

There are two elements in laches—lack of diligence on the part of plaintiff and injury to the defendant because of it. 30 *C. J. S., Equity,* Sec. 112, p. 521; *Westco-Chippewa Pump Co. v. Delaware El. & Supply Co.,* 64 F. 2d 185. These two elements must combine in order to operate as an estoppel, and neither element being present in the instant case, the appellee cannot bar the appellant's suit on that account.

There was error, therefore, in our opinion, in dismissing the bill on the two grounds assigned by the Chancellor—(a) insufficiency of allegations of fraud, and (b) laches and estoppel—and we must, accordingly, reverse the decree from which the appeal was taken and remand the cause for further proceedings.

*Decree reversed and cause remanded, with costs to the appellant.*