680 A.2d 528

Joseph N. SCHALLER, Trustee, et al.

v.

CASTLE DEVELOPMENT CORPORATION, et al.

No. 1288, Sept. Term, 1995.

Court of Special Appeals of Maryland.

May 31, 1996.

Reconsideration Denied Aug. 29, 1996.

Stephen J. Hughes (J. Preston Turner, Treanor, Pope & Hughes, Towson, Gardner M. Duvall, Dwight W. Stone, II and Whiteford, Taylor & Preston, L.L.P., Baltimore, on brief), for appellants.

Walter C. Martz, II (Martz & Martz, P.A., on brief), Frederick, for appellees.

Argued before WENNER, CATHELL and SALMON, JJ.

WENNER, Judge.

This dispute arose from the foreclosure sale of real estate in Frederick County (the foreclosed property) owned by Castle Development Corporation (Castle). After the Circuit Court for Frederick County declined to ratify an amended audit of the sale, the Trustees noted this appeal, asking us to resolve these questions:

I.    Whether the lower court erred in holding that the doctrines of equitable estoppel and laches applied, where the Exceptants presented no evidence of detrimental reliance on the original Statement of Mortgage Debt, and where the evidence demonstrated the impossibility of such detrimental reliance?

II.   Whether the lower court erred in basing its decision on issues that were res judicata because of the prior ratification of the foreclosure sale?

III.  Whether Maryland law requires that a mortgagee must always lose its first priority if it amends upward its statement of debt after the foreclosure sale?

Finding no error, we shall affirm the judgment of the circuit court.

### Facts

On 24 June 1993, the Trustees for the Bank of Baltimore ("the Bank"), docketed foreclosure of Castle's Deed of Trust, which was then in default. Castle had conveyed the property encumbered by the Deed of Trust to the Trustees as security for a loan to Castle from the Bank. The Deed of Trust had been modified on several occasions prior to being foreclosed. Moreover, the debt secured by the Deed of Trust had been cross-collateralized with other sums owed the Bank by Castle.

On docketing the foreclosure, the Trustees filed a Statement of Mortgage Debt indicating that the debt owed to the Bank was $39,479.85 (plus interest of $8.12 per diem after 3 March 1993). The foreclosed property was sold at public auction on

12 July 1993, and the sale was ratified on 9 September 1993 without exception.

On 27 July 1994, the Trustees filed an Amended Statement of Mortgage Debt, indicating that the debt owed to the Bank was $400,000. Neither this nor the initial Statement of Mortgage Debt was under oath, as required by Md. Rule W72.d.[1]

■ We glean from the record that the court auditor had prepared an audit based on the initial Statement of Mortgage Debt, when the Amended Statement of Mortgage Debt arrived on the scene. Consequently, an amended audit was prepared, based on the Amended Statement of Mortgage Debt. Both audits were submitted to the court on 28 July 1994.[2]

The appellees are several junior lien holders who noted exceptions to the amended audit. After conducting a hearing on the exceptions, the court held the matter sub curia. A second amended Statement of Mortgage Debt was filed on 21 October 1994, this time under oath. It too indicated that the debt owed to the Bank was $400,000.

---

1.  Indeed, Md. Rule W72.d. provides, in pertinent part:

    A foreclosure action shall not be docketed, unless, at the time of docketing, there has been filed under oath by the mortgagee, his agent or attorney, a statement of the mortgage debt remaining due and payable, or a certificate that, as of the time of docketing, a statement has been served upon the owner of the equity of redemption.

2.  As we recently observed in *Bunn v. Kuta*, 109 Md.App. 53, 64, 674 A.2d 26 (1996), "[C]ourts have general supervisory power over forced sales." Moreover, an audit is mandatory following a mortgage foreclosure sale. Md. Rule W74.e; *IA Construction Corporation v. Carney*, 341 Md. 703, 707, 672 A.2d 650 (1996). *See also Fairfax Sav. v. Kris Jen Ltd.*, 338 Md. 1, 16, 655 A.2d 1265 (1995) ("Upon final ratification of a report of sale in a mortgage foreclosure, it is mandatory that 'the papers in the proceeding ... be referred to [an] auditor to state an account,' directing the distribution of the proceeds of the sale. Rules BR6.b.5 and W74.e. A party or claimant may file exceptions to an auditor's account or report and obtain a decision by the court. Rule 2–543(g) and (h)").

Following another hearing, relying on the doctrines of equitable estoppel and laches,[3] the hearing judge struck the amended Statements of Mortgage Debt, declined to ratify the amended audit, and directed that an audit be prepared based on the initial Statement of Mortgage Debt. This appeal followed.

We shall add such further facts as may be necessary to our discussion of the issues.

## Discussion

### I.

We must first determine if applying the doctrines of equitable estoppel and laches constituted reversible error. The Court of Appeals defined equitable estoppel in *Knill v. Knill*, 306 Md. 527, 510 A.2d 546 (1986) as follows:

Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

*Id.* at 534, 510 A.2d 546 (quoting 3 J. Pomeroy, EQUITY JURISPRUDENCE, § 804 (5th ed. 1941), quoted in *Leonard v. Sav–A–Stop Services*, 289 Md. 204, 211, 424 A.2d 336 (1981)).

The Court of Appeals reiterated the elements of equitable estoppel in *Grimberg v. Marth*, 338 Md. 546, 659 A.2d 1287 (1995):

"[I]t is now well established that 'an estoppel may arise even where there is no intent to mislead, if the actions of one party cause a prejudicial change in the conduct of the other.' Indeed, all that is needed to create an equitable estoppel is (1) voluntary conduct or representation, (2) reliance, and (3) detriment."

---

3. Although it was noted the Trustees had failed to comply with Md. Rule W72.d, the hearing judge was "unpersuaded that this should affect the Bank's right, if any, to amend."

*Id.* at 555–56, 659 A.2d 1287 (quoting *Lampton v. LaHood,* 94 Md.App. 461, 475–76, 617 A.2d 1142 (1993) (quoting *Knill,* 306 Md. at 534–35, 510 A.2d 546)).

■ As the Court said in *Knill,* the elements of estoppel "are necessarily related to each other." *Knill,* 306 Md. at 535, 510 A.2d 546. In other words, "[t]he voluntary conduct or representation of the party to be estopped must give rise to the estopping party's reliance and, in turn, result in detriment to the estopping party." *Id.* (citing *Dahl v. Brunswick Corp.,* 277 Md. 471, 356 A.2d 221 (1976); *Savonis v. Burke,* 241 Md. 316, 216 A.2d 521 (1966)).

■ The Trustees assert that no evidence was presented by the appellees that they had relied on the original Statement of Mortgage Debt to their detriment. The Trustees also assert that it would not have been possible for the appellees to have relied on the initial Statement of Mortgage Debt to their detriment. To be sure, "the party who relies on an estoppel has the burden of proving the facts that create it." *Knill,* 306 Md. at 535, 510 A.2d 546 (citing *Doub v. Mason,* 2 Md. 380, 406 (1852); *First Nat. Bank v. Mayor and City Council,* 27 F.Supp. 444, 454 (D.Md.1939)).

Nonetheless, the hearing judge concluded that appellees had relied to their detriment on the initial Statement of Mortgage Debt. A representative of the appellees attended the foreclosure sale [4] but did not submit a bid for the reasons expressed by the hearing judge:

The properties sold at foreclosure brought Three [Hundred] Sixteen [Thousand] Seven Hundred Eighty–Nine and 59/100 Dollars ($316,789.59). The Bank's Statement of Debt filed up until that day, (and for many more months) reflected a mortgage debt of Thirty–Nine Thousand Four Hundred Seventy–Nine and 85/100 Dollars ($39,479.85). As the purchase bid was substantially higher than the Bank's claim, [appellees] were certain that they would be paid, and thus

---

4. As required by Md. Rule W74.a.2.(c), appellees had been notified of the "time, place, and terms" of the foreclosure sale.

did not consider bidding themselves. The court finds it inequitable for the Bank, over eleven months after the sale, to increase the claim to Four Hundred Thousand and 00/100 Dollars ($400,000.00), thus denying other creditors any opportunity to consider bidding on the property in an attempt to cover their liens.

The Trustees counter that appellees had constructive notice that the debt owed the Bank exceeded that indicated on the initial Statement of Mortgage Debt because they had constructive notice that the foreclosed property had been cross-collateralized. The hearing judge again disagreed:

Under the bank's theory, all the other creditors would have had to conduct independent investigations to ascertain the amount for which the other properties the Bank foreclosed upon sold, and calculated the corresponding surpluses or deficiencies to ensure that the Bank had not misled them with its own calculation of debt on this property. On the contrary, the Bank was in the best position to calculate the amount owing to it.

Accordingly, the hearing judge concluded that the appellees had "reasonably [relied] on the Bank's [initial] statement of debt."

The Trustees nevertheless claim it to have been impossible for the Bank to have known the total due it on docketing the foreclosure proceedings and filing the initial Statement of Mortgage Debt. The Bank maintains that it was not until the remaining Deeds of Trust had been foreclosed that it could have determined the total debt due from Castle. Unmoved, the hearing judge opined that it would have been

most appropriate for the Bank to have filed the Six Million Seven Thousand Eight Hundred and 48/100 Dollars ($6,007,-800.48) figure [the Bank] asserts was secured by the Deed of Trust.... Instead, the Bank certified Thirty–Nine Thousand Four Hundred Seventy–Nine and 85/100 Dollars ($39,479.85) as the debt and thereafter did not amend this figure periodically, as the sales [of other cross-collateralized property] were held, but rather amended literally on the eve

of the audit to Four Hundred Thousand and 00/100 Dollars ($400,000.00).

The hearing judge then considered whether appellees' reliance on the initial Statement of Mortgage Debt had prejudiced them. In doing so, he expressed concern over "grant[ing] a windfall to a party who has not been prejudiced," but he ultimately concluded that appellees "have been prejudiced as they were denied the opportunity to even consider whether to attempt to cover their liens." The hearing judge said he was not willing "to second guess whether these parties would or could have acted in a manner that would have protected their liens," but "[was] concerned that the [appellees] were denied the opportunity to so decide for themselves."

The hearing judge pointed out to the Trustees that, while it may have been appropriate to amend the initial Statement of Mortgage Debt after the sale, they were estopped from doing so under the circumstances before him. Although "first in time is first in right[5] ... weigh[ed] heavily on the [hearing judge's] mind," he nevertheless believed "the Bank's own conduct has changed the balance of equity."

The hearing judge also applied the doctrine of laches. As we recently observed in *LaValley v. Rock Point*, 104 Md.App. 123, 130, 655 A.2d 60, *cert. denied*, 339 Md. 354, 663 A.2d 72 (1995) (citations omitted), "[L]aches is an equitable doctrine and its application depends upon the facts and circumstances of each case. Its purpose is to do justice and it is never invoked unless it accomplishes that end."

As the Court of Appeals put it in *Staley v. Staley*, 251 Md. 701, 703, 248 A.2d 655 (1968):

The doctrine of laches is an application of the general principles of estoppel, and consists of two elements—negligence or lack of diligence on the part of the plaintiff in

---

5. *See Metcalfe v. Canyon Defined Benefit Trust*, 318 Md. 565, 568, 569 A.2d 669 (1990) ("It is a settled proposition of the law that the order of priority for payment of surplus proceeds from a foreclosure sale is based on the general rule 'first in time is first in right' ").

failing to assert his [or her] right, and prejudice or injury to the defendant. *Parker v. Board of Elec. Sup'rs*, 230 Md. 126, 186 A.2d 195; *Croyle v. Croyle*, 184 Md. 126, 40 A.2d 374. As set out in *Croyle*: "The very heart of the doctrine of estoppel, through laches, is that the defendant's alleged change of position for the worse must have been induced by, or resulted from, the conduct, misrepresentation or silence of the plaintiff." 184 Md. at 136, 40 A.2d at 379.

In sum, we are not persuaded that the hearing judge's application of the doctrines of equitable estoppel and laches was error.

## II.

■ The Trustees also contend that the hearing judge erred in considering issues rendered *res judicata* upon the sale having been ratified without exception. We disagree. It was not until more than ten months *after* the sale had been ratified, and on literally the eve of the audit being filed, that a first Amended Statement of Mortgage Debt was filed. Hence, it only *then* became evident to the appellees that they had been prejudiced by reason of loss of an opportunity to bid on the property. As appellees put it in their brief: "Left without the right to contest the sale now, what greater prejudice can accrue to the [appellees]?"

## III.

■ The Trustees finally inquire whether Maryland law requires the holder of a Deed of Trust to relinquish. its first priority if it amends its Statement of Mortgage Debt after the sale has been ratified.

We agree with the hearing judge that equitable estoppel and laches prohibited the Trustees from first amending the Statement of Mortgage Debt more than ten months after the sale had been ratified without exception, and on the very eve of the audit, and we point out to the Trustees that, while a Statement of Mortgage Debt may be amended after having first been filed, to include such things as delinquent taxes,

interest, and the like, it may not be amended in the fashion in which it was here amended.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.